962 A.2d 498

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. PAUL AMELIO, DEFENDANT–RESPONDENT.

Argued October 7, 2008—Decided December 22, 2008.

*Steven E. Braun,* Chief Assistant Prosecutor, argued the cause for appellant *(James F. Avigliano,* Passaic County Prosecutor, attorney).

*Douglas J. Kinz,* argued the cause for respondent.

*Teresa A. Blair,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey *(Anne Milgram,* Attorney General, attorney).

PER CURIAM.

In this case we decide whether a telephone call to a police dispatcher by a seventeen-year-old reporting that her father was drunk and driving provided a constitutional basis to stop defendant's vehicle. We hold that under the circumstances presented there was reasonable and articulable suspicion of an offense to support a constitutional motor vehicle stop by the police.

I.

The parties stipulated to the facts for the purpose of deciding defendant Paul Amelio's motion to suppress the evidence resulting from the motor vehicle stop. Specifically, the parties accepted the facts as presented in police officer Peter Turano's police report. On December 11, 2005, at approximately 12:30 a.m., Clifton Patrol Officers Peter A. Turano and Carmen Bermudez were dispatched

to defendant's home on Patricia Place to investigate a domestic disturbance between defendant and his seventeen-year-old daughter. The daughter initially had contacted police dispatch to report that she was having a verbal dispute with her father. While officers were en route to investigate the family crisis, dispatch advised that the daughter had called back with information that her father was drunk and that he was leaving the home operating a black Oldsmobile. The daughter also gave the New Jersey license plate number of the vehicle.

When the two officers arrived at the intersection of Passaic Avenue and Allwood Road, Turano saw a black Oldsmobile, with a license plate number matching the number provided by dispatch, turn left onto Patricia Place. Turano, who was driving a marked patrol car, pulled behind the Oldsmobile that had stopped on the side of the road. After approximately five seconds, defendant drove away towards his home. The officers followed, activated the lights and siren on the vehicle, and stopped behind defendant's vehicle after he pulled partially into the driveway of his home. As a result of the stop, the police charged defendant with driving while intoxicated, *N.J.S.A.* 39:4-50 (DWI), and refusing to submit to a breathalyzer test, *N.J.S.A.* 39:4-50.2.

The municipal court judge denied defendant's motion challenging the legality of the stop, finding that the police had reasonable suspicion to conduct an investigatory stop of defendant. Defendant then entered a conditional guilty plea to DWI, reserving the right to appeal the denial of his motion to suppress. The trial court imposed appropriate fines and penalties.

A de novo review followed, limited to the issue of the validity of the motor vehicle stop. The Law Division reversed. The court found that the police did not have reasonable suspicion to stop the motor vehicle because the officers failed to observe defendant driving erratically and because the call to police by defendant's daughter describing defendant as drunk was conclusory in nature.

The State appealed. In an unpublished decision, the Appellate Division affirmed. The panel reasoned that there was no evidence

that defendant operated his vehicle erratically, and it had "no way of knowing what the term 'drunk' meant to a seventeen-year-old immediately following a 'verbal dispute' with her father."

We granted the State's petition for certification to review the Appellate Division's ruling, 193 *N.J.* 587, 940 *A.*2d 1219 (2008), and also granted amicus curiae status to the Attorney General. We now reverse.

## II.

Both the United States and the New Jersey Constitutions protect citizens against unreasonable searches and seizures. *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. It is well established that the investigative stop of an automobile by police constitutes a seizure that implicates those constitutional protections. *Delaware v. Prouse,* 440 *U.S.* 648, 653, 99 *S.Ct.* 1391, 1396, 59 *L.Ed.*2d 660, 667 (1979) ("[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.") (citation omitted); *State v. Locurto,* 157 *N.J.* 463, 470, 724 *A.*2d 234 (1999).

"A lawful stop of an automobile must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." *State v. Carty,* 170 *N.J.* 632, 639–640, 790 *A.*2d 903, *modified by* 174 *N.J.* 351, 806 *A.*2d 798 (2002) (citing *Prouse, supra,* 440 *U.S.* at 663, 99 *S.Ct.* at 1401, 59 *L.Ed.*2d at 673). The burden is on the State to demonstrate by a preponderance of the evidence that it possessed sufficient information to give rise to the required level of suspicion. *State v. Pineiro,* 181 *N.J.* 13, 19–20, 853 *A.*2d 887 (2004).

We have noted that the "[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest." *State v. Stovall,* 170 *N.J.* 346, 356, 788 *A.*2d 746 (2002) (citing *State v. Citarella,* 154 *N.J.* 272, 279, 712 *A.*2d 1096 (1998)). The standard requires

" 'some minimal level of objective justification for making the stop.' " *State v. Nishina,* 175 *N.J.* 502, 511, 816 *A.*2d 153 (2003) (citation omitted). "When determining if the [police] officer's actions were reasonable," the court must consider the reasonable inferences that the police officer is entitled to draw " 'in light of his experience.' " *State v. Arthur,* 149 *N.J.* 1, 8, 691 *A.*2d 808 (1997) (citation omitted). "Neither 'inarticulate hunches' nor an arresting officer's subjective good faith can justify an infringement of a citizen's constitutionally guaranteed rights. Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' " *Ibid.* (alteration in original) (citations omitted). Moreover, the court should scrutinize the reasons for the particularized suspicion. *State v. Davis,* 104 *N.J.* 490, 505, 517 *A.*2d 859 (1986).

 In some circumstances an informant's tip may assist the court in evaluating whether the police officer had reasonable suspicion to stop a person. That said, "[a]n anonymous tip, standing alone, is rarely sufficient to establish a reasonable articulable suspicion of criminal activity." *State v. Rodriguez,* 172 *N.J.* 117, 127, 796 *A.*2d 857 (2002) (citing *Alabama v. White,* 496 *U.S.* 325, 329, 110 *S.Ct.* 2412, 2415, 110 *L.Ed.*2d 301, 308 (1990)). The anonymous informant's "veracity," "reliability" and "basis of knowledge" are "relevant in determining the value of his report." *Ibid.* (citation and quotation marks omitted).

We have noted that "[a] report by a concerned citizen" or a known person is not "viewed with the same degree of suspicion that applies to a tip by a confidential informant" or an anonymous informant. *Wildoner v. Borough of Ramsey,* 162 *N.J.* 375, 390, 744 *A.*2d 1146 (2000). That is, " '[d]ifferent considerations obtain ... when the informer is an ordinary citizen,' " *Ibid.* (omission in original) (quoting *State v. Davis,* 104 *N.J.* 490, 506, 517 *A.*2d 859 (1986) ("There is an assumption grounded in common experience that such a person is motivated by factors that are consistent with law enforcement goals.")); *see also Stovall, supra,* 170 *N.J.* at 362,

788 *A.*2d 746 (noting that "[w]hen an informant is an ordinary citizen, New Jersey courts assume that the informant has sufficient veracity and require no further demonstration of reliability").

In *Wildoner,* we cited with approval *State v. Lakomy,* 126 *N.J.Super.* 430, 435, 315 *A.*2d 46 (App.Div.1974). *Wildoner, supra,* 162 *N.J.* at 391, 744 *A.*2d 1146. In *Lakomy,* authored by then Judge Handler, later Justice Handler, the police were told that an employee of the company had seen the defendant with a gun. *Id.* at 432, 315 *A.*2d 46. The police located the defendant and patted him down. *Ibid.* In finding that the police had lawfully executed a stop and frisk, Judge Handler quoted the Wisconsin Supreme Court for the principle that an ordinary citizen who reports a crime stands in a much different light than an informant because the ordinary citizen " 'acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety.' " *Id.* at 436, 315 *A.*2d 46 (quoting *State v. Paszek,* 50 *Wis.*2d 619, 184 *N.W.*2d 836, 843 (1971)).

■ Applying these principles to the present case, the officers properly relied on the seventeen-year-old daughter's report that her father was drunk. This was not an anonymous tip. Rather, this was a citizen who gave her name to the police when she first reported a verbal fight in the household, and then a short while later reported that her father, whom she said was drunk, was leaving the house driving his car. The seventeen-year-old was " 'in the nature of a victim or complainant, whose information could be taken at face value irrespective of other evidence concerning [her] reliability.' " *Lakomy, supra,* 126 *N.J.Super.,* at 436, 315 *A.*2d 46 (citation omitted).

We agree with the State that this case may be an even stronger one than *State v. Golotta,* 178 *N.J.* 205, 837 *A.*2d 359 (2003), in support of finding no constitutional violation. In *Golotta,* in distinguishing a 9–1–1 call from an unknown informant, the Court declared that a 9–1–1 caller " 'place[d] his anonymity at risk' by virtue of using the 9–1–1 system" because the records required to be made of such calls "provide the police with an ability to trace

the identity of the caller in a manner that enhances his reliability." *Id.* at 225–26, 837 *A.*2d 359 (alteration in original). This Court analogized the information supplied by a 9–1–1 caller to a report offered by a citizen informant, finding that such a call should not be " 'viewed with the same degree of suspicion that applies to a tip by a confidential informant.' " *Id.* at 220, 837 *A.*2d 359 (citation omitted). The Court concluded that "the 9–1–1 caller must provide a sufficient quantity of information, such as an adequate description of the vehicle, its location and bearing, or 'similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller.' " *Id.* at 222, 837 *A.*2d 359 (quoting *United States v. Wheat,* 278 *F.*3d 722, 731 (8th Cir.2001), *cert. denied,* 537 *U.S.* 850, 123 *S.Ct.* 194, 154 *L.Ed.*2d 81 (2002)).

In *Golotta,* the 9–1–1 caller was an unknown informant who placed his anonymity at risk by virtue of using the 9–1–1 system. In the present case, the caller was a known person, who exposed herself to criminal prosecution if the information she related to dispatch was knowingly false. *See N.J.S.A.* 2C:33–39 (criminalizing knowingly and falsely reporting emergencies). Moreover, she described the vehicle and gave the license tag number. Thus, the rationale of *Golotta* applies to this case with even greater force.

Nor does the fact the caller was seventeen and merely described the driver as "drunk" alter the result. The term "drunk" has a commonly understood meaning and the signs of drunkenness are matters of common knowledge and experience. From the television, the Internet, and education in our schools, we have no doubt that a seventeen-year-old may fairly understand when someone is drunk. This Court recently reiterated that "New Jersey has permitted the use of lay opinion testimony to establish alcohol intoxication." *State v. Bealor,* 187 *N.J.* 574, 585, 902 *A.*2d 226 (2006) (citation omitted). We expressly noted that " '[a]n ordinary citizen is qualified to advance an opinion in a court proceeding that a person was intoxicated because of consumption of alcohol [because] [t]he symptoms of that condition have become such com-

mon knowledge....'" *Id.* at 587, 902 *A.*2d 226 (quoting *State v. Smith,* 58 *N.J.* 202, 213, 276 *A.*2d 369 (1971)). We find that in these fast-arising circumstances, there was no need to require a more precise description than the word "drunk" to describe a commonly understood condition.

In summary, the seventeen-year-old complainant first called the police for assistance because of a domestic disturbance with her father. She then called back to report that her father left the house driving his car while drunk, and described the vehicle, including the license tag number. In both instances, the caller provided her name and address to the police. Whether defendant had remained in the home or, as the situation developed here, was located in a motor vehicle, the police had a duty to investigate the report of a domestic disturbance. The caller's description that her father was drunk provided a sufficiently precise description of a commonly understood condition, and therefore, no further elaboration on his condition was required. The details of those reports by a known citizen gave the police reasonable and articulable suspicion to stop and investigate the conduct of defendant.

## III.

We reverse the judgment of the Appellate Division affirming the grant of the defendant's motion to suppress and remand to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.