NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4998-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JAMES A. BAILEY,

 Defendant-Appellant.
____________________________

 Argued March 23, 2017 – Decided May 12, 2017

 Before Judges Lihotz and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Mercer County, Indictment No.
 13-10-1303.

 Peter T. Blum, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Mr. Blum, of counsel and on the briefs).

 Narline Casimir, Assistant Prosecutor, argued
 the cause for respondent (Angelo J. Onofri,
 Mercer County Prosecutor, attorney; Ms.
 Casimir, of counsel and on the brief).

PER CURIAM

 Defendant James Bailey appeals from a May 1, 2015 judgment

of conviction after the entry of a guilty plea. We affirm.
 The State presented the following facts at the suppression

hearing. On July 22, 2013, Detective Scott Peterson and his

partner, Detective Gregory Hollo, of the Trenton Police

Department, were assigned to a crime suppression task force in

Trenton. The detectives were in an unmarked police car. At around

6:18 p.m., a radio dispatch reported a man with a gun, described

as a bald black man wearing a white t-shirt and blue jeans and

walking with a pit bull. The detectives responded to the area.

 Peterson described the area as a "high crime" where "several"

homicides and "several shootings" have occurred. Peterson

testified he and his partner arrived within seconds but did not

see anyone fitting the description of the man with the firearm.

The detectives began canvassing the area in their vehicle, and

after about thirty seconds, observed defendant, who matched the

description, standing in front of a corner bodega, with four to

six individuals.

 Peterson pulled the car in front of the bodega. As his

vehicle approached the corner, Peterson made eye contact with

defendant who appeared startled. Peterson put the vehicle in

park, and he and Hollo exited the vehicle with their firearms

drawn in a ready position. The detectives were wearing polo shirts

with their patch on it along with ballistic vests, identifying

them as police. As they walked towards the group, Peterson told

 2 A-4998-14T3
somebody to grab the pit bull, as he was unsure if it would attack.

As the detectives approached the individuals, defendant began

walking towards a bicycle on the sidewalk while Hollo yelled

"Trenton police, stop, stop right there."

 Hollo grabbed defendant by his waistband with his left hand,

with his firearm at his side, as defendant approached the bicycle.

Peterson described Hollo as "slowly pulling [defendant] back

towards . . . our vehicle." Defendant then reached into his

waistband with his right hand, retrieved a firearm, and handed it

to Peterson. The detectives arrested defendant. According to

Peterson, the time lapse was approximately four minutes from the

time of the radio broadcast to the recovery of the firearm.

 A Mercer County grand jury returned an indictment charging

defendant with second-degree unlawful possession of a handgun,

contrary to N.J.S.A. 2C:39-5(b); third-degree resisting arrest,

contrary to N.J.S.A. 2C:29-2(a)(3); and second-degree certain

persons not to possess a firearm, contrary to N.J.S.A. 2C:39-7(b).

 Defendant moved to suppress the gun, arguing the police lacked

sufficient reasonable suspicion to conduct an investigatory stop

and lacked probable cause to arrest. The trial judge denied

defendant's motion, finding under the totality of the

circumstances the detectives were justified in the investigatory

detention of defendant. Specifically, the judge noted "the nature

 3 A-4998-14T3
of the area and . . . defendant's reaction to seeing the police

arrive corroborate a particularized suspicion," and "the serious

and specific type of crime infecting the area . . . corroborates

the reliability of the [9-1-1] call." The judge also noted the

9-1-1 call's description of defendant with a pit bull and the

quick reaction time of the detectives arriving on the scene "weighs

in favor of the reliability of that evidence."

 Defendant pled guilty on March 9, 2015, to second-degree

certain persons not to possess a firearm. During defendant's plea

colloquy, he admitted he was in possession of a firearm on the day

he was arrested and knew he was not permitted to carry a firearm

because of a previous conviction for aggravated assault. In

exchange for dismissal of the remaining charges, the State agreed

to recommend a five-year term of imprisonment with a mandatory

five-year period of parole ineligibility. Defendant preserved his

right to appeal the motion to suppress.

 The trial judge sentenced defendant on April 21, 2015, to a

five-year prison term with a five-year period of parole

ineligibility. This appeal followed.

 Defendant raises the following argument on appeal:

 SUPPRESSION OF EVIDENCE IS REQUIRED BECAUSE
 [DEFENDANT] WAS ILLEGALLY SEIZED BASED UPON
 AN UNEXPLAINED AND UNCORROBORATED ANONYMOUS
 TIP TELEPHONED TO THE POLICE. U.S. CONST.
 AMENDS. IV, XIV; N.J. CONST. ART. I, PARA. 7.

 4 A-4998-14T3
 When reviewing a motion to suppress, we "must uphold the

factual findings underlying the trial court's decision so long as

those findings are supported by sufficient credible evidence on

the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting

State v. Robinson, 200 N.J. 1, 15 (2009)). "Those findings warrant

particular deference when they are 'substantially influenced by

[the trial judge's] opportunity to hear and see the witnesses and

to have the "feel" of the case, which the reviewing court cannot

enjoy.'" Ibid. (quoting Robinson, supra, 200 N.J. at 15). "To

the extent that the trial court's determination rests upon a legal

conclusion, we conduct a de novo, plenary review." Ibid. (citing

State v. J.D., 211 N.J. 344, 354 (2012); State v. Gandhi, 201 N.J.

161, 176 (2010)).

 Both the United States and New Jersey Constitutions protect

individuals against unreasonable searches and seizures. U.S.

Const. amend IV; N.J. Const. art. I, ¶ 7. Because the search at

issue was executed without a warrant, it is presumed facially

invalid; to overcome this presumption, the State must show that

the search falls within one of the well-recognized exceptions to

the warrant requirement. See Schneckloth v. Bustamonte, 412 U.S.

218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854, 858 (1973). The

State bears the burden of demonstrating that the seizure was legal.

State v. Valencia, 93 N.J. 126, 133 (1983).

 5 A-4998-14T3
 An investigative stop, or a Terry1 stop, allows police to

"detain an individual temporarily for questioning." State v.

Maryland, 167 N.J. 471, 486 (2001) (citing Terry, supra, 392 U.S.

at 22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906). To justify an

investigative stop, the police must have "a 'particularized

suspicion' based upon an objective observation that the person

stopped has been or is about to engage in criminal wrongdoing."

State v. Davis, 104 N.J. 490, 504 (1986). Additionally, "[t]he

'articulable reasons' or 'particularized suspicion' of criminal

activity must be based upon the law enforcement officer's

assessment of the totality of circumstances . . . ." Ibid.

"Reasonable suspicion necessary to justify an investigatory stop

is a lower standard than the probable cause necessary to sustain

an arrest." State v. Stovall, 170 N.J. 346, 356 (2002) (citing

State v. Citarella, 154 N.J. 272, 279 (1998)).

 Defendant in the present case was seized when the detectives

exited their vehicle with their guns drawn. Our inquiry therefore

rests on whether the officers had a "reasonable suspicion" to

justify the investigatory stop and search of defendant.

 We consider the "totality of the circumstances surrounding

the police-citizen encounter" when determining the reasonableness

1 Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889,
(1968).

 6 A-4998-14T3
of the stop. State v. Privott, 203 N.J. 16, 25-26 (2010) (quoting

Davis, supra, 104 N.J. at 504). We consider "a police officer's

'common and specialized experience,' and evidence concerning the

high-crime reputation of an area." State v. Moore, 181 N.J. 40,

46 (2004) (citations omitted). While a high crime area alone is

not a sufficient basis to justify the stop, "the location of the

investigatory stop can reasonably elevate a police officer's

suspicion that a suspect is armed." State v. Valentine, 134 N.J.

536, 547 (1994).

 An informant's tip may also provide an officer with reasonable

suspicion to stop a person. State v. Amelio, 197 N.J. 207, 212

(2008). However, "[a]n anonymous tip, standing alone, is rarely

sufficient to establish a reasonable articulable suspicion of

criminal activity." State v. Rodriguez, 172 N.J. 117, 127 (2002)

(citing Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412,

2415, 110 L. Ed. 2d 301, 308 (1990)). We look to an informant's

"veracity," "reliability" and "basis of knowledge" when

determining the sufficiency of the tip. Ibid. (quoting White,

supra, 496 U.S. at 328, 110 S. Ct. at 2415, 110 L. Ed. 2d at 308).

The police should also conduct "some independent corroborative

effort" in order to verify the reliability of the tip. Ibid. Our

Court has held a call placed to 9-1-1 "carries a fair degree of

reliability" as it is a crime to make a false report to the 9-1-1

 7 A-4998-14T3
telephone system. State v. Golotta, 178 N.J. 205, 219 (2003); see

also N.J.S.A. 2C:33-3(e). Even an anonymous tip, when placed

through the 9-1-1 call system and "contains sufficient information

to trigger public safety concerns and . . . provide[s] an ability

to identify the person," can be sufficient to establish reasonable

suspicion for an investigatory stop of that person. State v.

Gamble, 218 N.J. 412, 429 (2014).

 In Golotta, the Court provided a three-prong test police must

satisfy to justify an investigative detention based on a 9-1-1

caller's tip. 178 N.J. at 221-22. The State must show (1) "[t]he

information must convey an unmistakable sense that the caller has

witnessed an ongoing offense that implicates a risk of imminent

death or serious injury to a particular person"; (2) "[t]he caller

also must place the call close in time to his first-hand

observations"; and (3) "the 9-1-1 caller must provide a sufficient

quantity of information, such as an adequate description of the

[individual], its location and bearing, or 'similar innocent

details, so that the officer, and the court, may be certain that

the [individual] is the same as the one identified by the caller.'"

Golatta, supra, 178 N.J. at 221-22 (quoting United States v. Wheat,

278 F.3d 722, 731 (8th Cir. 2001).

 We begin by noting the detectives were conducting an

investigatory stop when they approached defendant. The act of an

 8 A-4998-14T3
officer exiting his vehicle with a firearm drawn does not

automatically constitute an arrest. Baker v. Monroe Twp., 50 F.3d

1186, 1193 (3rd Cir. 1995) ("There is no per se rule that pointing

guns at people, or handcuffing them, constitutes an arrest.")

Under the circumstances, it was reasonable for the detectives to

draw their firearms when approaching an individual who matched the

description of a man who would be armed and dangerous. The

detectives were "authorized to take such steps as were reasonably

necessary to protect [their] personal safety and to maintain the

status quo during the course of the stop." United States v.

Hensley, 469 U.S. 221, 235, 105 S. Ct. 675, 683-84, L. Ed. 2d 604,

616 (1985). In Hensley, the United States Supreme Court held that

an officer's conduct in approaching with gun drawn in a Terry stop

"was well within the permissible range in the context of suspects

who are reported to be armed and dangerous." Id. at 223-24, 235,

105 S. Ct. at 677-78, 684, 83 L. Ed. 2d at 608-09, 616. Therefore,

when the detectives exited their vehicle with their firearms drawn

defendant was not yet under arrest.

 The trial judge correctly found the totality of the

circumstances supported a finding of reasonable suspicion to

justify the investigative stop. The caller's tip demonstrated

defendant posed a threat to the public by walking in a high-crime

area with a firearm. The caller's description of defendant as

 9 A-4998-14T3
bald black male, wearing a white shirt and blue jeans, and walking

with a pit bull was also sufficiently detailed to satisfy the

third prong in Golatta. In addition to the caller's tip, the

high-crime nature of the area and the detectives' quick response

to the area following the radio dispatch corroborate the call to

find reasonable suspicion. The detectives also canvased the area

before finding defendant matching the description provided by the

caller, thereby corroborating the tip prior to the stop.

Defendant's startled reaction to the detectives arriving, as well

as his walking away from the scene as Detective Hollo yelled for

him to stop, contribute to the totality of the circumstances to

justify the investigative stop. Based upon these circumstances,

the trial court correctly found there existed reasonable suspicion

for the detectives to stop and search defendant.

 Defendant argues his case is similar to Florida v. J.L.,

where the Supreme Court found an anonymous caller reporting a

"young black male standing at a particular bus stop and wearing a

plaid shirt" carrying a firearm lacked sufficient credibility to

justify the stop. 529 U.S. 266, 274, 120 S. Ct. 1375, 1380, 146

L. Ed. 2d 254, 262 (2000). We are not persuaded. The caller

here, while not identified by name, is not anonymous because

Trenton Police had the caller's phone number and address.

Additionally, defendant's startled behavior, his disobedience to

 10 A-4998-14T3
the detectives' commands, his location in a high-crime area, and

the caller's description of defendant with a firearm, supported a

finding of reasonable suspicion to justify the investigative stop

of defendant.

 Affirmed.

 11 A-4998-14T3