**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4214-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD A. CEGLOWSKI II, a/k/a
EDWARD A. CEGLOWSKI, 2ND,
EDWARD CEGLOWSKI, EDDIE CEGLOWSKI,
EDWARD A. CEGLOWSKI, and
EDWARD CEGLOWSKI JR.,

    Defendant-Appellant.

_____

Submitted September 18, 2018 – Decided October 2, 2018

Before Judges Suter and Firko.

On appeal from Superior Court of New Jersey, Law Division, Warren County, Indictment No. 14-11-0406.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Richard T. Burke, Warren County Prosecutor, attorney for respondent (Kelly Anne Shelton, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from an order denying his motion to suppress a warrantless traffic stop that led to his conviction after a plea to driving while suspended for a second or subsequent driving while intoxicated (DWI), N.J.S.A. 2C:40-26(b), and motor vehicle violations related to DWI. He argues that the police lacked a reasonable, articulable suspicion because they relied upon a citizen's tip that defendant appeared intoxicated, and acted belligerently, and that this information was improvidently acted upon. We disagree with defendant's contention and affirm.

I.

Amanda Bentler ("Bentler") observed defendant, who appeared to be drunk, acting inappropriately at Bottle King, a liquor store, by yelling, harassing female customers and asking them if they were married, and running to and from cash registers. After exiting the store, Bentler got into her vehicle when defendant knocked on her window and yelled at her "not to text and drive." After observing him get into the driver's seat of a black Dodge pickup truck, she took note of his license plate number and called her fiancé, Patrolman Michael Madonna ("Madonna") of the Mansfield Police Department, expressing her concerns. In turn, Madonna, who was on duty, relayed her information over the

A-4214-16T3

police radio and spoke to Officer James Murtha ("Murtha") of the Hackettstown Police Department about a possible DWI. Murtha was able to stop defendant after observing him driving over a curb and talking on a hand-held cell phone. During a conversation, defendant told Murtha that his driving privileges were suspended.[1] Murtha detected the odor of an alcoholic beverage coming from defendant's breath. Another officer arrived and performed a field sobriety and Horizontal Gaze Nystagmus test, which resulted in defendant being charged with DWI, N.J.S.A. 39:4-50, refusal to submit to a breath test, N.J.S.A. 39:4-50.2, careless driving, N.J.S.A. 39:4-97, use of a cell phone, N.J.S.A. 39:4-97.3, obstructed view, N.J.S.A. 39:3-74, and driving while suspended for a second or subsequent offense, N.J.S.A. 2C:40-26(b).

After the hearing, the judge denied defendant's motion to suppress and made the following findings:

> Ms. Bentler had, as she conveyed to [O]fficer Madonna, and as she testified to in a credible manner in the opinion of this court, she had both the opportunity to make observations. She had the presence of mind to mentally record, and in the case of the plate number, to manually record those observations. And in point of fact, provided Madonna and in turn Murtha with a reasonable articulable basis to suspect that there may be a DWI afoot.

---

[1] In fact, a certified driver's abstract confirmed that defendant's license was suspended and that he had prior DWI convictions.

3

Now, therefore, under the totality of the circumstances officer Madonna had a reasonable and articulable suspicion to believe that a person was in violation, operated a motor vehicle in violation of Title 39. He had a duty consistent with the police community caretaking function to pass on that information to dispatch. And based upon that information Murtha in turn had a reasonable and articulable suspicion that the individual he observed operating a motor vehicle matching the description right down to six of the seven [alphanumeric] digits in the license plate, may have been operating in violation of the motor vehicle code.

After noting that "the reasonable suspicion standard is even lower than the probable cause standard," the judge assessed the reliability of the source of the information, the credibility of the testimony given by Bentler, Madonna, and Murtha, and concluded that the stop was valid. Addressing the applicability of State v. Amelio, 197 N.J. 207, 215 (2008), the judge found that Bentler communicated a commonly understood condition, a drunken person, which gives an officer a reasonable and articulable basis to stop and investigate. Ibid. The information here, the judge concluded, was conveyed with "an unmistakable sense that the caller has witnessed an ongoing offense that implicates a risk of imminent death or serious injury to a particular person such as a vehicle's driver or to the public at large." State v. Golotta, 178 N.J. 205, 221-22 (2003).

4

The judge denied the motion to suppress. Defendant entered an open plea to DWI and related charges and was sentenced. This appeal followed.

## II.

On appeal, defendant raises the following argument:

> THE MOTION TO SUPPRESS THE MOTOR VEHICLE STOP SHOULD HAVE BEEN GRANTED BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT FACTS ESTABLISHING A REASONABLE AND ARTICULABLE SUSPICION OF DRIVING UNDER THE INFLUENCE. U.S. Const. I, ¶¶ 1, 7.

We defer to the trial court's factual findings on a motion to suppress, unless they were "'clearly mistaken' or 'so wide of the mark' that the interests of justice require appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (citing N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). We exercise plenary review of a trial court's application of the law to the facts on a motion to suppress. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

The standards governing motor vehicle stops are familiar and well-settled, and we need not review them at length here. See generally Delaware v. Prouse, 440 U.S. 648 (1979); Golotta, 178 N.J. at 213; State v. Locurto, 157 N.J. 463 (1999). An officer must have at least a reasonable and articulable suspicion of

a motor vehicle violation or criminal offense in order to effectuate an investigatory stop. The issue on appeal is whether Murtha had a sufficient basis to stop defendant on suspicion he was intoxicated. The answer turns on the reliability of Bentler's report. "[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge' are 'relevant in determining the value of [the] report.'" State v. Rodriguez, 172 N.J. 117, 127 (2002) (quoting Alabama v. White, 496 U.S. 325, 328 (1990)). Reliability must be established by "some independent corroborative effort." Ibid.

Unlike the citizen informant in Golotta, who was anonymous, Bentler disclosed her identity, and was found to be a credible witness. Her tip did not seek some favor in return. Instead, she expressed concern for public safety by reporting defendant's intoxication and erratic behavior. The details, including the make and model of the vehicle, the license plate number, and its general location and direction, were specified. See Golotta, 178 N.J. at 209-10. Once Murtha confirmed the identity of defendant's vehicle, he observed him drive over a curb while using his cell phone.

Courts have upheld the constitutionality of a stop without an officer first observing the report of erratic driving. See e.g., id. at 210. A higher degree of

corroboration is involved in such an instance and has been satisfied here. We have also considered the lack of intrusiveness, since there was no vehicle search.

If the informant is a "concerned citizen or a known person[,]" less scrutiny attaches to the informant's reliability because a citizen "acts with an intent to aid the police in law enforcement because of [a] concern for society or for [personal] safety." Amelio, 197 N.J. at 212-13 (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000)). The judge found that Bentler satisfied these criteria.

An assessment of reasonable and articulable suspicion "must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced." State v. Davis, 104 N.J. 490, 504 (1986); see also State v. Stovall, 170 N.J. 346, 356 (2002). The State "is not required to prove that the suspected motor vehicle violation occurred." Locurto, 157 N.J. at 470.

We are satisfied that Murtha had a reasonable and articulable suspicion to conduct the stop in light of: the reliability of Bentler providing detailed information to Madonna; the corroboration of her identification of the vehicle, and the vehicle's location; as well as the danger to public safety posed by defendant's intoxication and erratic behavior before getting behind the wheel.

The judge aptly found that Madonna fulfilled his community caretaking function. "That function has its source in the ubiquity of the automobile and the

dynamic differential situations police officers are confronted with to promote driver safety." State v. Washington, 296 N.J. Super. 569, 572 (App. Div. 1997) (citation omitted).

We have considered defendant's other arguments and find that they are without sufficient merit to warrant comment. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4214-16T3