**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3046-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDRE R. GADDY, a/k/a
DRIZ, AND DIZZY,

     Defendant-Appellant.

_____

Submitted March 18, 2020 – Decided March 11, 2021

Before Judges Fuentes and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 18-05-0273.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (William P. Cooper-Daub, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

A Union County Grand Jury returned indictment 18-05-0270 charging defendant Andre R. Gaddy with one count of second degree possession of a handgun by a person previously convicted of one of the offenses listed in N.J.S.A. 2C:43-7b(1). A separate Union County Grand Jury returned indictment 18-05-0273 charging defendant with second degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b(l), fourth degree unlawful possession of hollow point bullets, N.J.S.A. 2C:39-3f(l), third degree hindering apprehension, N.J.S.A. 29-3b(l), and third degree receiving stolen property, N.J.S.A. 2C:20-7a.

After the trial court denied his motion to suppress the evidence supporting the charges against him, defendant entered into a negotiated agreement with the State through which he pled guilty to second degree unlawful possession of a handgun. In return, the State agreed to dismiss the remaining counts in both indictments and recommend the court sentence defendant to a term of seven years, with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), to run concurrently with a sentence imposed in the Somerset County vicinage.

2

Defendant accepted the terms of the plea agreement and provided a factual basis under oath to support his culpability. The court sentenced defendant on February 15, 2019, to seven years in prison, with forty-two months of parole ineligibility, to run concurrently with a sentence imposed for offenses committed in Somerset County, in accordance with the terms of the plea agreement.[1]

Defendant raises the following arguments in this appeal:

POINT I

> AN UNCORROBORATED ANONYMOUS TIP, EVEN IN CONJUNCTION WITH FLIGHT FROM POLICE IN A HIGH-CRIME AREA, DOES NOT ESTABLISH REASONABLE AND ARTICULABLE SUSPICION TO CONDUCT AN INVESTIGATIVE DETENTION; THEREFORE, THE EVIDENCE SHOULD BE SUPPRESSED. [U.S. CONST., AMENDS. IV AND XIV; N.J. CONST., ART. I, ¶ 7.]

POINT II

> IN DENYING SUPPRPESSION, THE COURT ERRONEOUSLY FOUND THAT DEFENDANT LACKED STANDING TO CHALLENGE THE SEARCH AND SEIZURE, THAT HE DID NOT

---

[1] Defendant pled guilty in Somerset County to one count of third degree burglary and two counts of third degree attempted burglary. N.J.S.A. 2C:18-2(a)(1) and 2C:5-1(a)(3). The Somerset court sentenced him to three years on each count, to run concurrently. This sentence would also run concurrently with the sentence imposed in Union County.

A-3046-18

HAVE A REASONABLE EXPECTATION OF PRIVACY IN THE AREA SEARCHED, AND THAT THE GUN WAS ADMISSIBLE PURSUANT TO THE PLAIN VIEW DOCTRINE.

We reject these arguments and affirm. We derive the following facts from the factual record developed before the trial court at the evidentiary hearing conducted in response to defendant's motion to suppress.

Detective James Williams of the Plainfield Police Department was the only witness called by the State. At the time of this hearing, Detective Williams was assigned to the Narcotics Vice Section. He testified that on February 21, 2018, at approximately 6:51 p.m., he was in the 200 block of Pond Place, in an area he described as "a residential neighborhood." Although it was dark at the time he arrived, there were streetlights in the immediate area where "the incident occurred" which provided good lighting.

Detective Williams was familiar with the area because he patrolled it "pretty much on a daily basis . . . when [he was] out on patrol." He characterized the area as "a high crime, high narcotic area . . . [and] the scene of numerous shootings and homicides since I've been employed with the police department." He reported to this area in response to a telephone call from a "concerned citizen" who reported possible illicit activities. The caller claimed that "about five to seven individuals . . . were congregating and engaging in disorderly

4

activity" in a driveway on West 3rd Street "which is accessed from the 200 block of Pond Place." The prosecutor followed up with the following questions:

Q. Were there any particular type of activities going on in that area around the time of this incident?

A. Very -- disorderly activity such as gambling, drinking in public, narcotic activity, gang activity.

. . . .

Q. Was there any other specific information that was relayed to you by this concerned citizen?

A. The concerned citizen relayed that [they] overheard that one of them -- heard -- overheard a conversation in regards to one of -- one of them, if not all of them, being in possession of a firearm.

Q. Were you given any information with regard to a particular individual?

A. No.

Q. Were you given the descriptions of any particular individuals or anyone else in that area?

A. No.

Based on this information, Williams and other "police units" responded to the area in unmarked police vehicles to investigate. According to Williams, although the vehicles were not traditionally marked patrol cars, they are nevertheless "very well known" because they are equipped with emergency

5

lights and sirens. Furthermore, although the officers wore plain clothes, they had "visible police identifiers" such as "Plainfield Police baseball caps, detective badges around our necks, tactical vests . . . [the] vest is actually a bullet proof vest, it has Velcro police on the front and the back in white lettering."

On arrival, the officers saw approximately six to seven individuals sitting and standing on the driveway that is adjacent to the sidewalk "engaging in disorderly activity." When asked to specify, Williams responded: "Drinking in public, smoking, just being loud and tumultuous."[2] From this group of individuals, Williams testified that two men, later identified as defendant Gaddy and Troy White, immediately attracted his attention. Williams testified that as soon as he and Detective McCall alighted from their unmarked police car and identified themselves as police officers, both men "reached into the front of their waistband and turned their back . . . away from us and began running east towards the back fence of that yard." Based on his training and experience, Williams "believed" these two men "might have been in possession of a weapon."

_____

[2] On cross-examination by defense counsel, Williams expanded on what he meant by disorderly activity to include "gambling" and "shooting dice."

A-3046-18

Williams testified that he and other officers identified themselves as police officers and began to chase the two men. They ordered the two men to stop, to no avail. The police officers caught up to the two suspects seconds later, when they reached a tall fence. Williams saw defendant pull from his waistband what he "immediately recognized as a semi-automatic handgun . . . and throw it . . . over the fence into the adjacent yard." The officers then "wrestled" defendant and White to the ground and handcuffed them.

On cross-examination, defense counsel asked Williams for the name of the "concerned citizen" who reported the disorderly conduct. This prompted an immediate objection by the prosecutor who argued the identity of the caller was protected under N.J.R.E. 516, which provides, in relevant part:

> A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State . . . and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.

Defense counsel argued that the information provided by the anonymous caller was the only reason the police officers responded to the area where defendant and the other individuals were located. Defense counsel emphasized:

7

"That is why it is so crucial to find out what started this whole chain of events. So that is why we need this information." According to defense counsel, it is not enough for the caller to merely claim that he needs protection against possible retaliation. Otherwise, "it would be very easy for citizens to take out their vendettas against people[.]" The judge denied defendant's application based on the plain language of N.J.R.E. 516.

In a memorandum of opinion, the judge found the police properly responded to the caller's report of suspicious activities in a particular area of the municipality. Upon their arrival, the officers observed defendant and White engaged in conduct that provided reasonable suspicion to investigate further. Before the officers had the opportunity to interact with them, defendant and White ran from the scene and ignored repeated commands to stop. The judge found

> [t]he detectives were lawfully in the area where they observed and seized the handgun. The detectives were conducting a field inquiry from the public streets of Plainfield—a place where they were lawfully allowed to be present. The detectives then ran after [d]efendant. Once . . . [d]efendant removed an object from his waistband, Detective Williams identified the object as a handgun. Defendant then threw the handgun over the chain-link fence, leaving the handgun in plain view, in a public area. Because the detectives were lawfully present and the handgun was in plain view, the search

A-3046-18

and seizure of the handgun is lawful under the plain view doctrine.

As an intermediate appellate court, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Against these facts, we agree with the court's conclusion that under the plain view doctrine, the police officers properly seized the handgun discarded by defendant. The officers were lawfully in the viewing area and the nature of the evidence was immediately apparent. State v. Gonzales, 227 N.J. 77, 82 (2016).

The information provided by the confidential caller had far more probative value than similar information provided by an anonymous informant. State v. Amelio, 197 N.J. 207, 212–13 (2008). We affirm the motion judge's decision to deny defendant's request to reveal the identity of the "concerned citizen" caller under N.J.R.E. 516 because defendant's unsubstantiated allegations of need in this case were not sufficient to justify disclosure. State v. McDuffie, 450 N.J. Super. 554, 567 (App. Div. 2017).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9