**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2794-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AKEEM M. BARPTELUS, a/k/a
HAKEEM M. BARPTELUS,

     Defendant-Appellant.

_____

Argued April 8, 2025 – Decided May 12, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-10-0646.

Michael J. Kenney, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Michael J. Kenney, of counsel and on the briefs).

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the brief).

PER CURIAM

Defendant Akeem M. Barptelus appeals from a judgment of conviction entered after his guilty plea, arguing the trial court erred in denying his motion to suppress and by granting the State's motion to compel a buccal swab for DNA testing of a handgun recovered during an automobile search. Based on our careful review of the record and prevailing law, we affirm.

I.

We discern the salient facts from the record established at the suppression hearing and the motion to compel a buccal swab. The State presented testimony from Officer John Maldonado and played the officer's bodycam video footage at the suppression hearing. Defendant did not call any witnesses to testify.

On December 18, 2020 at around 11:00 p.m., Maldonado and Officer Michael Castro were patrolling an area called "12 post," a "high drug area" in Elizabeth, New Jersey. Maldonado first noticed a white Toyota at a gas station, because of the vehicle's heavily-tinted front windows. As Maldonado continued patrolling, he saw the vehicle again on the roadway and, while driving behind the Toyota, he "r[a]n the plate" in his mobile data terminal (MDT), the "computer inside the vehicle." The search returned "a possible active warrant"

associated with M.P.,[1] the registered owner of the Toyota. Maldonado activated his lights and sirens and proceeded to stop the vehicle.

Maldonado did not contact dispatch to confirm the warrant in the MDT was still active before accomplishing the motor vehicle stop. Maldonado explained "[his] policy is to stop the car to find out information, before [he] check[s] to see if [his] own information for the basis of [his] stop is actually accurate . . . " because the owner may not be driving the car. However, Maldonado testified he would not stop a car and make an arrest based on the MDT information, without first verifying the arrest warrant with dispatch.

When Maldonado approached the Toyota, he smelled raw marijuana and observed the driver along with four passengers, including defendant. Maldonado confirmed the driver was the owner of the vehicle, M.P. The officers asked the driver about the possibility of an outstanding warrant, and she told the officers "she had some issues in Orange, but that was taken care of." Based on the smell of marijuana emanating from the Toyota, Maldonado and Castro searched the vehicle, finding marijuana and a handgun.

---

[1] We use initials of the other individuals who are part of the factual underpinnings of this appeal in the interest of privacy, and because this appeal only concerns defendant Barptelus. See R. 2:6-1(a)(3); R. 1:38-3(c)(7).

A-2794-23

Maldonado was at headquarters when the officers learned the arrest warrant was not for the driver, but was for a different M.P.—"someone of a similar name." In Maldonado's experience, the information generated from the MDT has only been incorrect "about twice" in his five and a half years as a police officer, including on this occasion. Maldonado testified that sometimes the MDT is not updated with the most current information and other officers have found the information on the MDT is incorrect fairly often.

Defendant was charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j), and possession of fifty grams or less of a controlled substance, N.J.S.A. 2C:35-10(a)(4).

On August 23, 2023, the trial court issued a written decision denying defendant's motion to suppress, making findings. The court found that the "mistaken belief [the] owner [was] subject to [a] warrant" was a permissible basis for the stop because the computer check "demonstrated that there was an outstanding warrant for [M.P.], the registered owner of the Toyota sedan." The trial court cited to Maldonado's testimony that in his five-year career as an officer, the MDT has only been wrong twice. The trial court "f[ound] it was reasonable to initiate a traffic stop to ascertain if the vehicle's owner, who was

4

believed to be subject to a warrant, was driving." The trial court also cited to the driver's admission that she "had a matter in Orange Municipal Court where the warrant was outstanding against the name of [M.P.]." On this basis, the trial court determined "the officers' reasonable belief that the vehicle's owner had an outstanding warrant [was] adequate to substantiate a reasonable and articulable suspicion that justifie[d] the initiation of the traffic stop."

Following the trial court's denial of the motion to suppress, one co-defendant sought a Graves Act Waiver, which was granted on November 2, 2022. The State offered a Graves Act Waiver Plea, which co-defendant rejected. On November 10, 2022, the State conveyed its intention to seek testing from the weapon recovered from the vehicle to determine if there was enough DNA present for comparison purposes. The State sought consent for a buccal swab, but defendant refused.

At a November 28, 2022 case management conference, the trial court instructed the State to file a motion to compel buccal swabs from the non-consenting defendants. On January 10, 2023 the Union County Prosecutor's Office Forensic Laboratory (the Union County Lab) issued a report stating the DNA on the handgun was sufficient for comparison purposes. Three days later, the State moved to compel based on affidavits from a detective, a Union County

Lab DNA analyst, and an assistant prosecutor, along with the DNA report itself. Defendant opposed the State's application as time-barred.

On July 6, the trial court granted the State's motion to compel a buccal swab from defendant based on the affidavits submitted, reasoning "the State was not sitting idly by, awaiting the eve of trial to compel discovery" but was actively negotiating plea offers, "which would have rendered the need for discovery unnecessary." The trial court explained that after co-defendant's Graves Act Waiver Plea Offer was rejected, the State sought consent for DNA samples one week later and only "filed [the] motion to compel in January 2023 after receiving confirmation from Union County Lab that there was sufficient DNA present for comparison to defendants' samples."

The trial court found the State's motion to compel buccal swabs was predicated on probable cause and was timely. In its written opinion, the trial court distinguished State v. Gathers, 234 N.J. 208, 221-22 (2018), determining "the case at bar presents distinct facts and circumstances that qualify as a justifiable delay."

This appeal followed, with defendant raising the following arguments for our consideration:

A-2794-23

POINT I

THE TRIAL COURT ERRED BY DENYING THE SUPPRESSION MOTION BECAUSE IT IS UNREASONABLE TO INITIATE A TRAFFIC STOP BASED ON A POSSIBLE OUTSTANDING WARRANT BEFORE CONFIRMING THE WARRANT'S ACCURACY

POINT II

THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION TO COMPEL BUCCAL SWABS BECAUSE THE SIGNIFICANT DELAY IN SEEKING FORENSIC TESTING WAS UNREASONABLE

Our analysis follows.

## II.

### A.

Our review of a trial court's ruling on a motion to suppress is deferential. State v. Goldsmith, 251 N.J. 384, 398 (2022). The reviewing court "'must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" Ibid. (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). We use this standard because it recognizes the trial court's "opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)) (internal quotation marks

omitted). Thus, we will not disturb the trial court's factual findings unless they are "so clearly mistaken," the "interests of justice demand intervention and correction." Ibid. (quoting State v. Gamble, 218 N.J. 412, 425 (2014)) (internal quotation marks omitted). However, we review the trial court's legal conclusions and its perspective of "'the consequences that flow from established facts[,]'" under the de novo standard. Ibid. (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

Our review of the disposition of a motion to compel a defendant to turn over evidence implicates the "same standard" as our review of a motion to suppress, requiring us to determine whether the trial court's factual findings "'are supported by sufficient credible evidence in the record.'" State v. C.J.L., 471 N.J. Super. 477, 483 (App. Div. 2022) (quoting State v. A.M., 237 N.J. 384, 395 (2019)). We only disturb a trial court's findings regarding a motion to compel "'if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Williams, 461 N.J. Super. 80, 94 (App. Div. 2019) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

B.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right of people to be

secure against unreasonable searches and seizures and "'impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Maristany, 133 N.J. 299, 304 (1993)); U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.

"An investigatory stop or detention is constitutional only if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." Elders, 192 N.J. at 247 (internal quotation marks omitted); see also State v. Atwood, 232 N.J. 433, 444 (2018) ("An officer may stop a motor vehicle only upon articulable and reasonable suspicion that a criminal or motor vehicle violation has occurred.") (internal quotation marks omitted); State v. Alessi, 240 N.J. 501, 518 (2020) ("The State must show the stop was based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.") (internal quotation marks omitted).

Reasonable suspicion "requires 'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)). "[A]n investigative

9

detention 'may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch.'" State v. Chisum, 236 N.J. 530, 546 (2019) (quoting State v. Coles, 218 N.J. 322, 343 (2014)). "'The suspicion necessary to justify a stop must not only be reasonable, but also particularized.'" State v. Smith, 251 N.J. 244, 258 (2022) (quoting State v. Scriven, 226 N.J. 20, 37 (2016)). "Determining whether reasonable and articulable suspicion exists for an investigatory stop is a highly fact-intensive inquiry that demands evaluation of 'the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Nyema, 249 N.J. 509, 528 (2022) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)); see also State v. Stovall, 170 N.J. 346, 363 (2002) (explaining the trial court considers an officer's training and experience in its totality of the circumstances analysis).

Our well-settled jurisprudence informs our conclusion that the totality of the circumstances shows Elizabeth Police Officer Maldonado had the reasonable and articulable suspicion necessary to stop the Toyota based on the arrest warrant for the registered owner which appeared in the MDT, without first confirming the warrant's validity.

10

In a similar situation, the Court in State v. Williams, 254 N.J. 8 (2023), held that when an officer conducts an MDT search showing a vehicle owner's driver's license is suspended, there is "constitutionally valid reasonable suspicion authorizing the officer to stop the vehicle—unless the officer pursuing the vehicle has a sufficient objective basis to believe that the driver does not resemble the owner." Id. at 16. We have also sustained the constitutionality of a stop even where the MDT records later prove to be incorrect. See State v. Pitcher, 379 N.J. Super. 308, 315, 320 (App. Div. 2005) (when DMV records "reveal that the owner's license to drive is suspended, that information is sufficient to give rise to a reasonable suspicion that the vehicle is being driven in violation of the motor vehicle laws and to warrant a stop of the vehicle," even if those records later prove to be incorrect.)

Here, Maldonado permissibly ran the Toyota's license plate in the MDT, which returned information that there was an active warrant for the vehicle's owner. We conclude that in this instance, the active arrest warrant for the vehicle owner was reasonable and articulable suspicion allowing the officer to effectuate a motor vehicle stop and to investigate further. The establishment of reasonable suspicion requires only "some minimal level of objective justification [to make the stop]," Amelio, 197 N.J. at 211-12, and "[t]he

suspicion need not rise to the 'probable cause necessary to justify an arrest.'" State v. Pineiro, 181 N.J. 13, 20 (2004) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)).

We conclude the precedent defendant cites addressing arrests based upon warrants later found to be invalid is inapplicable to our reasonable and articulable suspicion analysis. In State v. Shannon, 222 N.J. 576, 578 (2015), the Court found a search incident to an arrest was not based on probable cause where the arrest warrant had been judicially vacated but not removed from a computer database. Similarly distinguishable is State v. Sutherland, 231 N.J. 429, 432 (2018), where the court found that an arrest based on an officer's mistake of law in interpreting a statute did not comport with constitutional principles.

Here, Maldonado's decision to stop the vehicle was not based on a "mere hunch." Instead, the stop was predicated on his observation of a vehicle with heavily tinted windows, prompting him to initiate an MDT search which revealed an active arrest warrant for the vehicle owner. In Maldonado's five years of personal experience as an officer, the MDT search had an insignificant number of inaccurate results, although other officers had relayed different experiences with the MDT. Taking these facts together, we conclude under the

12

totality of the circumstances that Maldonado had reasonable suspicion to effectuate the stop of the Toyota to determine if the driver of the vehicle was the individual who was the subject of the active warrant. We discern no error in the trial court's determination that the motor vehicle stop comported with constitutional principles.

C.

We are unconvinced the State's motion to compel defendant's buccal swab was unnecessarily delayed, and patently unreasonable.

"'A blood test or cheek swab for the purposes of obtaining a DNA sample is a "search."'" Gathers, 234 N.J. at 221 (quoting State v. O'Hagen, 189 N.J. 140, 149 (2007)). In Gathers, the Court considered whether the affidavit provided by the State in support of its motion to compel a buccal swab "provided sufficient probable cause to support the search." Id. at 213. The Gathers Court recognized that if the defendant has not been charged with one of the enumerated crimes in N.J.S.A. 53:1-20.20,[2] the State must file a motion supported by probable cause, including a hearsay affidavit that "(1) set[s] forth the basis of knowledge for the certification or affidavit and (2) establishe[s] that there was

---

[2] These "enumerated crimes" largely include violent crimes, such as sexual assault and homicide, and certain disorderly persons offenses, which defendant was not charged with.

a 'fair probability' that defendant's DNA was on [the evidence]." Id. at 225. The Gathers Court also "not[ed] that an affidavit from a police officer familiar with the investigation would be preferable to an assistant prosecutor's hearsay certification as support for an application for a buccal swab." Id. at 223.

We discern no error in the trial court's decision to grant the State's motion to compel defendant to submit to a buccal swab under Gathers. The State produced a lab report concluding there was enough DNA on the handgun to conduct comparison analyses; and hearsay affidavits were submitted from Detective Khallaf, who certified to the necessity for the buccal swab, and from an assistant prosecutor who certified to the necessity of the motion.

We also conclude the State's motion is not time-barred. The chronology in the record shows that following the trial court's denial of defendants' motion to suppress, the State engaged in plea negotiations with defendants and, when those negotiations failed, promptly attempted to avoid filing the motion to compel by requesting defendant consent to the buccal swab on November 10, 2022. After defendant refused to consent, the trial court directed the State at the November 28 conference to file the motion to compel. The State could not file the motion until January 12, 2023 when the Union County lab submitted the report to it concluding the handgun contained sufficient DNA for comparison

14

purposes. Thus, an earlier motion would not have established the probable cause required to obtain relief pursuant to <u>Gathers</u>.

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division