**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1937-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID L. SMITH, a/k/a
MONT,

    Defendant-Appellant.

_____

Submitted March 15, 2021 – Decided April 6, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 19-02-0098.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal from a criminal conviction solely concerns the legality of a warrantless search of defendant David L. Smith's vehicle by police after a motor vehicle stop. The search uncovered a loaded handgun and hollow point bullets inside the vehicle between the driver's seat and the center console. Applying well settled principles of search-and-seizure law, we uphold the trial court's denial of defendant's motion to suppress the seized evidence and thereby affirm his ensuing conviction of a weapons offense.

I.

The pertinent and unrebutted facts that emerged at the suppression hearing are as follows.

On November 26, 2018, at approximately 10:20 p.m., four Trenton Police detectives from the Street Crimes Unit were patrolling in a marked Trenton Police SUV.[1] They were in what testimony described as a "high drug area, and also weapons-related offenses area" near East State Street and Olden Avenue in Trenton. Detectives Brieer Doggett and a Detective Cheek were the senior

_____

[1] It appears that the SUV was not equipped with a Motor Vehicle Recording device.

officers in the SUV that evening, while Detectives Tilton and Jimenez were the junior officers.[2]

Detective Doggett was the sole witness at the suppression hearing. As we describe his account of the events, we bear in mind the trial court found his testimony to be credible.

Doggett testified that as the officers' SUV approached an intersection with a red light, they stopped directly behind a Ford Taurus signaling a left turn. When the traffic light turned green, the Taurus slowly turned left and the detectives followed, activating the emergency lights and sirens. According to Doggett, the detectives initiated the stop because the windows of the Taurus appeared to be illegally tinted. He explained they were able to tell that the windows were tinted "[f]rom the headlights of [their] vehicle, and also the lights on the street and the businesses nearby." Doggett added that, although he could not estimate the distance between the Taurus and the police SUV, it was "close enough that [he could] tell [the] back window [was] tinted." "[A]t that point the decision was made that [the detectives] were going to stop and issue a ticket."

---

[2]  The record on appeal does not identify the first names of the latter three detectives.

Despite the detectives activating the SUV's lights and sirens, the Taurus continued to proceed slowly after completing the left turn. The Taurus eventually pulled over to the side of the road. Detective Doggett then stepped out of the SUV. However, as he began to do so, the Taurus resumed moving away slowly. Doggett then returned to the SUV and turned on the sirens again, at which point the Taurus "drove a little further, then it stopped."

Once the Taurus stopped again, Detectives Doggett and Cheek got out of their SUV and approached the car from behind. Doggett approached from the rear passenger's side, while Cheek approached from the rear driver's side.

While he approached, Doggett could see through the Taurus's rear window, because he was illuminating it with his handheld flashlight. Doggett then saw what he believed to be the Taurus's driver, later identified as defendant, "shoving an object in between the driver's seat and the center console." Based on this movement, Doggett testified that he "feared [defendant] was trying to conceal a firearm or any other type of weapon."

Doggett then ordered defendant to roll down his windows. Defendant refused to do so upon the first command. As described by Doggett, defendant "continued with the same motion he was already doing," and Doggett "had to shout to him two additional times to roll down the window" before he complied.

According to Doggett, once the windows were down he was able to clearly see into the car, where he saw defendant continuing to move his right arm as if shoving an object between the driver's seat and the center console.  Doggett then ordered defendant to stop moving his right arm and show his hands.  Defendant refused to do so.

Given defendant's refusal to comply with Doggett's order to stop moving his right arm, Doggett instructed him to get out of the car.  Again, defendant refused.  According to Doggett, at this point he had his gun drawn, but was unsure if the other detectives had their weapons out.

Rather than comply with these police commands, defendant continued to make a shoving motion in the same location within the car.  Detective Cheek then began to open the driver's side door and attempted to extract him from the car.

It is unclear if Detective Cheek forcefully pulled defendant from the vehicle or if he got out on his own.  In any event, as defendant exited the vehicle Detective Cheek "passed him" to Detectives Tilton and Jimenez, who took control of him without yet handcuffing him.

At the same time as Detectives Tilton and Jimenez were gaining control of defendant, Detective Cheek entered the vehicle and "immediately went to the

A-1937-19

area where [defendant] was shoving the object." As Detective Cheek completed this search, she signaled a "301," meaning that she had located a firearm. Doggett acknowledged that defendant was not resisting arrest at that point, as Detectives Tilton and Jimenez were holding him.

Detective Cheek's search uncovered a chrome .38 Smith & Wesson revolver loaded with hollow-point bullets[3] or "dum-dum rounds."

Defendant was then taken into custody and was taken to police headquarters. He was issued a motor vehicle summons for illegal tinted windows.[4] He was then charged in an indictment with various offenses, specifically second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b(1); third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7a and 2C:20-2b(2)(b); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3f(1); and a second-degree "certain persons not to possess a firearm" offense, N.J.S.A. 2C:39-7b(1).

---

[3] Defense counsel objected to the admission of evidence of the gun and hollow point bullets at the suppression hearing on the basis that Detective Doggett did not himself remove them from the car. Counsel preserved a chain of custody evidentiary objection for trial, which was mooted by the ensuing plea agreement.

[4] A copy of the summons for the motor vehicle violation has not been provided.

Defense counsel argued at the suppression hearing that the State's failure to present evidence proving that the Taurus windows were illegally tinted made the motor vehicle stop and all fruits of the search illegal. Counsel further argued that the search of the car was not justified by any exceptions to the constitutional requirement for a search warrant.

On August 16, 2019, Judge Robert Bingham issued an extensive oral opinion denying defendant's motion to suppress. In that opinion, the judge concluded that the police officers had reasonable suspicion of a tinted-windows violation to justify the stop of the Taurus. In addition, the judge found that the totality of circumstances authorized the police to perform a protective sweep of the area inside the car where Detective Doggett had seen defendant "shoving" an object between his seat and the console. Further, the judge held that the automobile exception to the warrant requirement applied because the officers, as events unfolded, had probable cause to believe the car contained a weapon or other evidence of criminal activity.

Following the court's denial of his suppression motion, defendant entered into a plea agreement with the State. Pursuant to the agreement, he pled guilty to one count of the indictment (unlawful possession of a handgun) in exchange for a recommended sentence of five years with a three-and-a-half-year parole

7

disqualifier, as well as dismissal of all remaining charges. He preserved his right to pursue the present appeal contesting the court's suppression ruling.

In December 2019, the trial court sentenced defendant to a custodial term consistent with the plea agreement.[5] This appeal followed.

II.

Defendant presents the following arguments in his brief:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO PROVE THE CAR'S WINDOWS WERE TINTED IN VIOLATION OF THE MOTOR VEHICLE CODE.
>
> POINT II
>
> THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE WARRANTLESS CAR SEARCH WAS ILLEGAL.
>
> A.    THE POLICE COULD NOT CONDUCT A PROTECTIVE SWEEP BECAUSE THEY HAD NO REASONABLE SUSPICION THERE WAS A WEAPON AND SMITH COULD NOT ACCESS HIS CAR.
>
> B.    THE AUTOMOBILE EXCEPTION CANNOT JUSTIFY THE WARRANTLESS CAR SEARCH BECAUSE POLICE HAD NO PROBABLE CAUSE THE CAR CONTAINED A WEAPON.

---

[5] Defendant does not appeal his sentence.

Having fully considered these points, we affirm substantially for the reasons expressed in Judge Bingham's oral decision. We add a few points of amplification.

Our scope of review of the suppression ruling is well established. We must defer to the trial court's factual findings from the suppression hearing, so long as they are supported by sufficient credible evidence in the record. State v. Nelson, 237 N.J. 540, 551 (2019) (citing In Interest of J.A., 233 N.J. 432, 445 (2018)). Our review of the judge's factual findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing State v. Johnson, 42 N.J. 146, 161-62 (1964)). By contrast, the trial court's interpretation of the law and the legal "consequences that flow from the established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014).

The applicable law is clear. In general, under the Fourth Amendment of the United States Constitution and under Article I, paragraph 7 of the New Jersey Constitution, a warrantless search is presumed invalid and "permissible only if 'justified by one of the few specifically established and well-delineated exceptions to the warrant requirement.'" State v. Witt, 223 N.J. 409, 422 (2015) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)). That is, a defendant has a constitutional right to be free from indiscriminate searches and seizures by

police without a warrant, unless one or more of the recognized exceptions to the warrant requirement apply. Ibid.

Further, a traffic stop is lawful when based on a reasonable and articulable suspicion that a traffic or other offense has been committed, and the State has the burden to prove by a preponderance of the evidence that such suspicion was present. State v. Amelio, 197 N.J. 207, 211 (2008); see also Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) (stating a "motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act" and noting that the initial stop for tinted windows and loud exhaust was valid).

To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). This analysis may also consider police officers' "background and training," including their ability to "make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. at 555 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Moreover, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 439 (2011).

Defendant's first argument is that the trial court incorrectly denied his motion to suppress the physical evidence found in his vehicle because the State "failed to present any evidence that the car's windows were tinted in violation of the motor vehicle code." He argues because Detective Doggett did not testify to specific facts indicating why the window tint on defendant's vehicle was perceived at the time of the stop to be in violation of N.J.S.A. 39:3-74 and N.J.S.A. 39:3-75 and because not all window tint is illegal, that the stop was illegal and thus the gun and hollow point bullets are fruits of the poisonous tree under U.S. Const. amends. IV, XIV; N.J. Const. art. I, ¶ 7; and Wong Sun v. United States, 371 U.S. 471, 484-86 (1963). We reject these contentions.

N.J.S.A. 39:3-74, states in its entirety:

> Every motor vehicle having a windshield shall be equipped with at least one device in good working order for cleaning rain, snow or other moisture from the windshield so as to provide clear vision for the driver, and all such devices shall be so constructed and installed as to be operated or controlled by the driver.

No person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.

No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.

[Ibid. (emphasis added).]

This provision has been construed to provide a reasonable basis for law enforcement officers to conduct a traffic stop where there is a reasonable articulable suspicion that the windshield or front-windows of a vehicle are illegally tinted. State v. Cohen, 347 N.J. Super. 375, 380 (App. Div. 2002) (affirming a stop based solely upon officers suspicion that windows were illegally tinted and stating "it matters not whether the equipment used violates N.J.S.A. 39:3-74, because the fact that a defendant is later found not guilty does not denigrate the propriety of the initial stop so long as it is based upon a reasonable articulable suspicion that a motor vehicle violation has occurred" (citations omitted)).

The pertinent part of a companion statute, which the trial judge relied upon in his ruling, N.J.S.A. 39:3-75, provides that "[n]o person shall drive any motor vehicle equipped with safety glazing material which causes undue or unsafe

<u>distortion of visibility</u> or equipped with unduly fractured, discolored or deteriorated safety glazing material . . . ."[6]  (Emphasis added).  The unsafe distortion of visibility under this statute is not apparently limited to only the windshield and front windows, as it is in N.J.S.A. 39:3-74.  <u>See</u> <u>Bernokeits</u>, 423 N.J. Super. at 369 (finding reasonable suspicion to stop a vehicle that had loud exhaust and windows "completely tinted black" in suspected violation of N.J.S.A. 39:3-75).

Here, as Judge Bingham rationally found, the police had a reasonable basis to stop defendant for a tinted-windows violation.  The unrefuted testimony of Detective Doggett established that he observed the rear windows of the Taurus appeared to be tinted as it was making a left-hand turn.  In addition, the subsequent failure of defendant to heed the police vehicle's lights and siren amplified the reason to detain him.  After the Taurus was stopped, Doggett noticed that he was unable to see clearly into the car's interior until the driver's

---

[6] The State argues that <u>State v. Mandel</u>, 455 N.J. Super. 109, 111-12 (App. Div. 2018), stands for the proposition that a stop based on solely a suspected violation of N.J.S.A. 39:3-75 is a recognized basis for a valid stop.  However, that opinion does not discuss the validity of a stop.  It instead focuses on whether the officer broke the plane of the car when he may have put his head in the window and smelled marijuana under the "plain smell" doctrine.  <u>Id.</u> at 113.  The court in <u>Mandel</u> did not reach the particular issue that arises in the case at bar and, therefore, is not applicable here.

window was rolled down. Considering the totality of circumstances, there was more than an ample basis for the police to have reasonable suspicion of a tinted-windows violation.

Next, defendant argues the judge erred in finding the police were entitled to perform a protective sweep of the area where defendant appeared to have been stashing an object between his seat and the center console. In a related vein, defendant contends the elements of the automobile exception are lacking here as well. We reject these contentions.

As Judge Bingham noted, a warrantless protective sweep is allowable "where the totality of the circumstances support a reasonable suspicion that a driver or passenger is dangerous and may gain immediate access to a weapon." See also State v. Robinson, 228 N.J. 529, 547-58 (2017) (citing Michigan v. Long, 463 U.S. 1032 (1983)).

The judge further cited the case of State v. Lund, 119 N.J. 35 (1990), for the proposition that:

> [T]here are some instances in which nervous or furtive movements by a motorist, perhaps alone, do not present reasonable suspicion of probable cause. But, where accompanied by other circumstances, may . . . ripen into reasonable suspicion that the person may be armed and dangerous, or provides probable cause to believe that the person possesses criminal contraband.

14

[(Citing Lund, 119 N.J. at 48).]

The judge reasoned that, the "consistently evasive behavior and furtive gestures" by defendant were sufficient, in this case, to escalate the routine traffic stop "to the point where the police ultimately had probable cause to search the vehicle."

We concur with the judge's analysis. The judge was mindful of case law that cautions that a police officer's observation of "furtive movement" or nervousness by a stopped motorist, in and of itself, is insufficient to justify a warrantless search of a vehicle. See State v. Rosario, 229 N.J. 263, 277 (2017). Here, however, there is more than such behavior involved. Defendant exhibited a repetitive course of conduct of defiance, starting with his initial refusal to obey the police command to stop his car, followed by his attempt to drive away when Detective Doggett walked up to his vehicle, and then his non-immediate ultimate stop. His physical movement appeared to be "shoving" an object between the center console and driver's seat, which easily could have been a weapon he was trying to hide. The stop occurred late at night in an area known for criminal activity. The judge reasonably found these factors, in combination, justified the protective sweep and limited search, which was limited to the "area where [defendant] was shoving the object." See State v. Bryant, 227 N.J. 60, 70 (2017)

(stating that a protective sweep for the purpose of officer safety must be "narrowly confined to a cursory visual inspection").

We are well aware the police outnumbered defendant at the scene. However, we defer to the judge's factual finding that defendant was not handcuffed immediately when he emerged from the car. A limited search of the area where a gun may have been stashed was justified for the officers' safety.

Lastly, since the trial judge found that both the protective sweep exception and the automobile exception applied in this case, for the sake of completeness, we note the following. The automobile exception allows a police officer to "conduct a warrantless search of a motor vehicle if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense." Witt, 223 N.J. at 422 (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). The trial judge found the facts met the higher standard of probable cause here. We need not reach that conclusion because the facts of this case fit firmly within the protective sweep exception to the warrant requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1937-19