766 A.2d 316

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. BRIAN J. SNYDER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 13, 2000—Decided January 31, 2001.

60 

Before Judges COBURN, AXELRAD and LANDAU.

*Robinson & Kavanagh,* attorneys for appellant (*Arnold Robinson,* on the brief).

*Arthur J. Marchand,* Cumberland County Prosecutor, attorney for respondent (*Susan Novick,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D. (retired and temporarily assigned on recall).

Defendant Brian J. Snyder appeals his conviction of operating a motor vehicle under the influence of alcohol, *N.J.S.A.* 39:4-50, following a trial *de novo* in the Law Division, Cumberland County, on the record established before the Municipal Court of Vineland.

Defendant contends that the trial court should have found that the State failed in its burden to prove operation under the influence beyond a reasonable doubt. The argument rests primarily upon defendant's uncorroborated factual assertion that, after causing minor damage to another vehicle in a tavern parking lot, he drank whiskey from a V–O bottle that he kept in his car.[1] Defendant said this drinking took place after he decided to call his wife so that she could drive him home, but before the police arrived.

Our review of the record satisfies us that the proofs and stipulations before the court were sufficient to fulfill the State's

---

[1] The assertion of post-operation alcohol consumption in a vehicle is popularly known as the "glove box" defense. *See State v. Lizotte,* 272 *N.J.Super.* 568, 572, 640 *A.2d* 876 (Law Div.1993).

burden of persuasion under *N.J.S.A.* 39:4–50 beyond a reasonable doubt. In consequence, we affirm.

Defendant testified that he had three beers at the Fireside Tavern during a period of three hours beginning at about 10:30 p.m. on June 4, 1999. He left the tavern about 1:30 to 1:35 a.m. on June 5, went to his pick-up truck, backed out of his space and was about to exit onto the highway when a man told him that he had backed into and damaged a parked vehicle.

Defendant said he then drove to the front of the tavern, parked his truck, and walked over to examine the damaged vehicle where he noticed what he characterized as "slight damage on the front hood." According to the defendant, he wanted to "try and make an agreement between the young lady whose car I backed into," and so he called his wife for assistance in that regard and also so "she could come to the scene and pick me up and take me home."

When the young lady appeared to be upset, defendant testified he then went to his vehicle where he drank about "three shots of alcohol" from a bottle. Defendant maintained that he consumed the V–O about fifteen minutes after reparking his truck, before he learned that the police had been called, but after he had called his wife to assist and to take him home.

When a police officer arrived at 1:52 a.m.,[2] he asked for defendant's credentials. Defendant dropped the contents of his wallet on the ground. Defendant told the officer that he consumed three beers in the tavern, but not about later drinking from a bottle of V–O which, he testified, by then he had "stuck under the seat of the car." The officer administered a field sobriety test which defendant was unable sufficiently to perform, particularly as to balance and full alphabet recital. Back-up was summoned, and defendant was arrested and *Mirandized.* At the Vineland Police

---

[2] There was a minor conflict between an apparent stipulation, referred to in the Municipal Court transcript, that the accident occurred at 1:52 p.m., and defendant's testimony that police arrived at 1:52 p.m. The summons issued reflects 1:52 as the time of offense.

Station, two valid breathalyzer tests were administered at 3:21 a.m. and 3:29 a.m., producing blood-alcohol readings of .13% and .14% respectively.

The accuracy of the breathalyzer readings is not challenged on appeal. Rather, defendant argues that this case is unlike *State v. Lizotte, supra* note 1, 272 *N.J.Super.* 568, 640 *A.2d* 876, cited by the trial judge, because his drinking and operation of the motor vehicle were not "so closely intertwined that they constituted one event," nor was there "an intimate association of ingestion of alcoholic beverages with the control of a potentially lethal device." *Id.* at 572, 640 *A.2d* 876. He contends that the breathalyzer test taken in the police department reflects the alcohol in his system after he drank in the parking lot, and was not properly indicative of his level of intoxication at the time of operation or imminent operation of his vehicle because he decided not to drive himself home.

Defendant's argument omits mention of critical facts. Moreover, it implicitly assumes that the judge was required to accept his unverifiable, uncorroborated, and highly unlikely tale of post-operation alcohol consumption before the police arrived. We accept neither the omission nor the assumption.

We note first that the State's burden to show operation while under the influence of alcohol was easily established prima facie. As of the offense date, a defendant could be convicted under *N.J.S.A.* 39:4–50(a) when a breathalyzer test administered within a reasonable time after the defendant was actually driving his vehicle revealed a blood-alcohol level of at least .10% at the time of testing, extrapolative evidence being inadmissible. *State v. Tischio,* 107 *N.J.* 504, 506, 527 *A.2d* 388 (1987).

There was certainly probable cause for the police to believe defendant had been operating his pick-up truck while under the influence. *N.J.S.A.* 39:4–50(a)(3) provides that

Whenever an operator of a motor vehicle has been involved in an accident resulting in ... property damage, a police officer shall consider that fact along with all other

facts and circumstances in determining whether there are reasonable grounds to believe that person was operating a motor vehicle in violation of this section.

Defendant had admitted to drinking during the previous three hours at the tavern, and was either unaware or unconcerned that he had backed into another car with sufficient force to cause hood damage. He was actually driving off when stopped by a bystander. Confronted with that situation, defendant says he was sufficiently concerned to call his wife to drive him home. When a police officer arrived at about 1:52 a.m., some fifteen or twenty minutes after defendant says he exited the tavern, defendant was unable to perform a sobriety field test. Moreover, he did not then mention to the officer that he had consumed more alcohol before the test, nor did defendant exhibit the bottle or present a witness who saw him go back to his truck to drink. Allowing for the seven or eight minutes fixed by defendant as the time he took to drive about after leaving the tavern and reparking after being informed of the accident, several more minutes for his conversation with the distraught owner of the damaged auto, and some additional time for the alleged call to his wife, only a few minutes at most could have elapsed between defendant's alleged subsequent consumption of V O and the police officer's arrival.

The breathalyzer readings were concededly accurate. We find no fault with the trial judge's conclusion that their administration, which we calculate as about an hour and forty-five minutes after defendant reparked, and an hour and one-half after his arrest, was within a reasonable time as required by *Tischio,* 107 *N.J.* at 521, 527 *A.*2d 388. *See also State v. Samarel,* 231 *N.J.Super.* 134, 143, 555 *A.*2d 40 (App.Div.1989)(holding that three and one-half hours between time of defendant's accident and his testing was reasonable).

*N.J.S.A.* 39:4–50(a) "prescribes an offense that is demonstrated solely by a reliable breathalyzer test administered within a reasonable period of time after the defendant is stopped for drunk driving.... Prosecution neither requires nor allows extrapolation evidence to demonstrate the defendant's blood-alcohol level while

actually driving." *Tischio,* 107 *N.J.* at 522, 527 *A.*2d 388. As interpreted by our Supreme Court, the Legislature made a .10% blood-alcohol level a per se offense in order to remove drivers who may not yet have reached the requisite blood alcohol level before the potential danger becomes real. *Tischio,* 107 *N.J.* at 521, 527 *A.*2d 388. The elements necessary to prove driving under the influence of alcohol in New Jersey are set forth under *N.J.S.A.* 39:4–50(a). Generally, proof of operation of a motor vehicle, coupled with a blood alcohol level of .10% or greater taken from a breath or blood test administered within a reasonable period of time after operation constitutes a per se violation of the statute.

The per se nature of this offense was further emphasized in *State v. Hammond,* 118 *N.J.* 306, 317, 571 *A.*2d 942 (1990), in which the Court observed: "The Legislature has thus made crystal clear that intoxication objectively determined by a breathalyzer test coupled with the operation of a motor vehicle constitutes the offense of drunk driving." Further amplifying its understanding of the legislative policy where a breathalyzer test is given within a reasonable time, the Supreme Court has also explained: "In our DWI decisions we attempt to eliminate every possibility of pretextual defenses. We have done so not only because of any doubts about the veracity of the factual defense offered, but also because of the potential for pretext." *State v. Fogarty,* 128 *N.J.* 59, 68–69, 607 *A.*2d 624 (1992).

The trial judge in this case faithfully adhered to these precedents. Particularly in a case where, as here, an accident occurred and police involvement was likely, New Jersey courts should not be quick to encourage a defense founded upon post-event voluntary ingestion of additional alcohol by a defendant.

Under the facts described, the trial judge properly concluded that the State proved its case beyond a reasonable doubt by establishing the requisite elements for a *N.J.S.A.* 39:4–50(a) violation.

Before the Supreme Court granted certification in *Tischio,* we had stated:

In our view the statute focuses on the operation of the motor vehicle where there is sufficient alcohol in the driver's system to produce the proscribed reading *so long as there has been no further ingestion of alcohol between the time of operation and the time of testing.*

[*State v. Tischio,* 208 *N.J.Super.* 343, 347, 506 *A.*2d 14 (App.Div.1986) (Emphasis added) ].

Our Supreme Court has not directly addressed the question of further ingestion of alcohol after operation, but the precedents cited suggest it would be unlikely to do so in a case where such ingestion was purely voluntary and in circumstances so closely intertwined with the events immediately surrounding operation of a vehicle and an accident.

The Court has made very clear the legislative policy to discourage the kind of frivolous defenses which have the potential for being pretextual by enacting a statute based on objective measurements of intoxication. *Hammond, supra,* 118 *N.J.* at 318, 571 *A.*2d 942. That policy would surely be disserved were we to require the State to address the effect of voluntary post-operation drinking for which there exists, as in this case, not one shred of corroborative objective or circumstantial evidence, and which the existing undisputed proofs render unlikely.

We have, nonetheless, reviewed independently defendant's factual contentions by evaluating the record which was considered by the Law Division judge. *See R.* 2:10–5. Defendant produced no bottle of V–O, no eyewitness, no telephone log, nor even his wife to confirm that he made the call. If in fact he did phone his wife to come over and drive him home, there was no evidence that she ever came to the scene. Defendant had already caused an accident and was unsteady in the sobriety test after three hours of tavern drinking. As noted earlier, there would have been no reason for him to ask to be driven home, presumably leaving his truck parked in front of the tavern, if he was not under the influence of alcohol. If his wife did not show up and the police did not come, defendant would likely have continued on home independently.

The trial judge gave no indication that he believed defendant's story. Reading the same record as the trial judge had before him, defendant's assertions appear to us far less than credible and far short of a showing sufficient to mandate resolution of the question whether *Tischio's* holding would permit a credible "glove box" defense.

Affirmed.