32 A.3d 1152

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. THOMAS W. BERNOKEITS, JR., DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 28, 2011—Decided December 22, 2011.

Before Judges PARRILLO, GRALL and SKILLMAN.

*Kevin S. Quinlan,* attorney for appellant.

*Marlene Lynch Ford,* Ocean County Prosecutor, attorney for respondent (*Samuel Marzarella,* Assistant Prosecutor, of counsel; *Robert Cassidy,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

We are asked to decide whether standard, roadside field sobriety testing requires the police to have probable cause to arrest or to search, or may it be undertaken on the basis of reasonable suspicion alone.

The facts are essentially undisputed. On July 31, 2010, at approximately 3:30 a.m., Seaside Heights Police Officer John Moritz observed defendant operating a motor vehicle with tinted windows and loud exhaust. After following him for about one block, Moritz pulled defendant's vehicle over for the observed equipment violations. Moritz approached defendant and requested his driver's credentials, which defendant then produced. Appearing a bit scared and nervous, defendant asked why he was stopped, and Moritz explained the muffler was excessively noisy and the windows were completely tinted black, preventing the officer from seeing the inside of the vehicle. Detecting a strong odor of alcohol coming from defendant's breath, Moritz inquired whether defendant had been drinking. Defendant admitted to consuming a beer that night at Bamboo, a local bar; however, Moritz sensed the alcohol smelled more like hard liquor and not beer. Based on his observations and defendant's admissions, Moritz requested defendant exit the vehicle to perform field sobriety testing, "to make sure that he was okay to drive."

Thereafter, defendant was arrested and charged with driving while intoxicated, *N.J.S.A.* 39:4–50; excessive muffler noise, *N.J.S.A.* 39:3–70; and improper safety glass, *N.J.S.A.* 39:3–75. Challenging the administration of the field sobriety testing for want of probable cause, defendant filed a motion to suppress, which the municipal court judge denied, reasoning:

> [L]ooking at the totality of the circumstances, the strong odor of alcohol from his breath, the admission that he had at least a beer, that it was 3:30 in the morning[,] and that he said he was at the Bamboo Bar ... all of that certainly rise[s] ... to constitute a reasonable and articulable suspicion that at least the officer had a duty to go forward to ascertain by the use of the psychophysicals whether or not he formulated the opinion he was or was not under the influence.

Subsequently, defendant entered a conditional guilty plea to the DWI charge and was sentenced to a mandatory seven-month loss of his license, twelve hours in the Intoxicated Driver Resource Center (IDRC), and various fines.

Defendant then appealed to the Law Division which heard the matter de novo and denied the suppression motion. In rendering his decision, the judge concluded that "[b]ased upon the location, the time, the odor, the nervousness and the admission of consumption" of alcohol, the officer had reasonable suspicion that another offense was being committed and that he was justified in broadening the initial inquiry. Defendant was again found guilty of DWI and the municipal court sentence was reimposed.

This appeal follows.

In challenging the legal standard employed by the courts below, defendant contends that because the command to submit to field sobriety testing constitutes a de facto arrest, the police action may only be sustained upon a showing of probable cause, which is absent here. While we agree that the facts of record do not support a finding of probable cause, they do amount to a reasonable articulable suspicion that defendant was driving while intoxicated and, therefore, justify the added detention required to administer the field sobriety tests.

█ As a threshold matter, no one disputes the legitimacy of the initial motor vehicle stop based on the officer's observed motor vehicular equipment violations. *See, e.g., State v. Moss,* 277 *N.J.Super.* 545, 547, 649 *A.*2d 1349 (App.Div.1994). A motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act. *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979); *see also State v. Garland,* 270 *N.J.Super.* 31, 42–43, 636 *A.*2d 541 (App.Div.), *certif. denied,* 136 *N.J.* 296, 642 *A.*2d 1005 (1994).

█ Nor can it be seriously questioned that the resultant request of a motorist to exit the vehicle is constitutionally permis-

sible. *Pennsylvania v. Mimms*, 434 *U.S.* 106, 111, 98 *S.Ct.* 330, 333, 54 *L.Ed.*2d 331, 337 (1977); *State v. Smith*, 134 *N.J.* 599, 611, 637 *A.*2d 158 (1994). This is because once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *See Terry v. Ohio*, 392 *U.S.* 1, 20, 88 *S.Ct.* 1868, 1879, 20 *L.Ed.*2d 889, 905 (1968). Where the police have already lawfully decided that the driver shall be briefly detained, the additional intrusion of requesting him to step out of his vehicle has been described as "de minimis." *Mimms, supra,* 434 *U.S.* at 111, 98 *S.Ct.* at 333, 54 *L.Ed.*2d at 337. "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Ibid.*

Here, of course, the encounter went beyond a mere directive to exit the vehicle and encompassed the added command to submit to field sobriety testing. To be sure, the temporary detention of an individual during an automobile stop constitutes a "seizure" of the person and implicates Fourth Amendment concerns. *Whren v. United States,* 517 *U.S.* 806, 809–10, 116 *S.Ct.* 1769, 1772, 135 *L.Ed.*2d 89, 95 (1996). However, such brief investigatory stops short of arrest are permitted where police officers have a reasonable suspicion of ongoing criminal or unlawful activity. *Terry, supra,* 392 *U.S.* at 20, 88 *S.Ct.* at 1879, 20 *L.Ed.*2d at 905. Even though the initial stop was for a motor vehicle violation, a police officer is not precluded from broadening the inquiry of his stop "[i]f, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances 'give rise to suspicions unrelated to the traffic offense.'" *State v. Dickey,* 152 *N.J.* 468, 479–80, 706 *A.*2d 180 (1998) (quoting *United States v. Johnson,* 58 *F.*3d 356, 357 (8th Cir.), *cert. denied,* 516 *U.S.* 936, 116 *S.Ct.* 348, 133 *L.Ed.*2d 245 (1995)); *see also State v. Baum,* 199 *N.J.* 407, 424, 972 *A.*2d 1127 (2009). Thus, in order to continue to detain a motorist once he is asked to exit the vehicle, a police officer must have a reasonable, articulable suspicion that the person is involved in criminal or

unlawful activity *beyond* that which initially justified the stop. *State v. Davis,* 104 *N.J.* 490, 504, 517 *A.*2d 859 (1986). Reasonable suspicion is "a particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity." *Ashcroft v. al-Kidd,* —— *U.S.* ——, 131 *S.Ct.* 2074, 2088, 179 *L.Ed.*2d 1149, 1164 (2011); *see also State v. Carvajal,* 202 *N.J.* 214, 228, 996 *A.*2d 1029 (2010); *State v. Thomas,* 110 *N.J.* 673, 678, 542 *A.*2d 912 (1988).

 It is well-settled that the touchstone of the Fourth Amendment is reasonableness, *Terry, supra,* 392 *U.S.* at 37–38, 88 *S.Ct.* at 1888, 20 *L.Ed.*2d at 915–16, and reasonableness, in turn, is measured in objective terms by examining the totality of circumstances. *Davis, supra,* 104 *N.J.* at 504, 517 *A.*2d 859. In applying this test, courts give weight to " 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.' " *State v. Citarella,* 154 *N.J.* 272, 279, 712 *A.*2d 1096 (1998) (quoting *State v. Arthur,* 149 *N.J.* 1, 10, 691 *A.*2d 808 (1997)). In any given case, the reasonableness of the investigatory detention is a function of the degree and kind of intrusion upon the individual's privacy balanced against the need to promote governmental interests. *Davis, supra,* 104 *N.J.* at 504, 517 *A.*2d 859.

 Granted, an investigative stop may become a de facto arrest when " 'the officers' conduct is more intrusive than necessary for an investigative stop.' " *Dickey, supra,* 152 *N.J.* at 478, 706 *A.*2d 180 (quoting *United States v. Jones,* 759 *F.*2d 633, 636 (8th Cir.1985)). While there is no "bright line" test to determine when an investigative stop becomes a de facto arrest, courts have identified several factors relevant to this determination, including, most significantly, the temporal duration of the stop. *Dickey, supra,* 152 *N.J.* at 478–79, 706 *A.*2d 180. While there is "no rigid time limitation on *Terry* stops," *United States v. Sharpe,* 470 *U.S.* 675, 685, 105 *S.Ct.* 1568, 1575, 84 *L.Ed.*2d 605, 615 (1985), a detention may become too long if it involves "delay unnecessary to

the legitimate investigation of the law enforcement officers." *Id.* at 687, 105 *S.Ct.* at 1576, 84 *L.Ed.*2d at 616. An important consideration in this regard "is whether the officer used the least intrusive investigative techniques reasonably available to verify or dispel his suspicion in the shortest period of time reasonably possible." *Davis, supra,* 104 *N.J.* at 504, 517 *A.*2d 859.

■ " 'Another factor is the degree of fear and humiliation that the police conduct engenders.' " *Dickey, supra,* 152 *N.J.* at 479, 706 *A.*2d 180 (quoting *United States v. Bloomfield,* 40 *F.*3d 910, 917 (8th Cir.1994), *cert. denied,* 514 *U.S.* 1113, 115 *S.Ct.* 1970, 131 *L.Ed.*2d 859 (1995)). Moreover, " 'transporting a suspect to another location or isolating him from others may also give rise to an arrest,' " *Dickey, supra,* 152 *N.J.* at 479, 706 *A.*2d 180 (quoting *Bloomfield, supra,* 40 *F.*3d at 917); as may handcuffing or confining him in a police car. *Dickey, supra,* 152 *N.J.* at 479, 706 *A.*2d 180; *see also United States v. Willis,* 967 *F.*2d 1220, 1224 (8th Cir.1992).

■ Despite the fact that none of these circumstances occurred here, defendant asks us to hold that the field sobriety testing he underwent is the equivalent of a full blown arrest and therefore must be supported by the more stringent standard of probable cause. We reject this notion. *See Berkemer v. McCarty,* 468 *U.S.* 420, 442, 104 *S.Ct.* 3138, 3151, 82 *L.Ed.*2d 317, 336 (1984) (holding that a police officer requesting the defendant to perform a field sobriety test in a public place "cannot fairly be characterized as the functional equivalent of formal arrest"); *cf. State v. Green,* 209 *N.J.Super.* 347, 350, 507 *A.*2d 743 (App.Div. 1986) (holding that a DWI suspect is not entitled to *Miranda*[1] warnings prior to administration of field sobriety tests); *State v. Ebert,* 377 *N.J.Super.* 1, 9, 871 *A.*2d 664 (App.Div.2005) (same); *State v. Weber,* 220 *N.J.Super.* 420, 424, 532 *A.*2d 733 (App.Div.), *certif. denied,* 109 *N.J.* 39, 532 *A.*2d 1107 (1987) (same).

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

Here, there is no indication that defendant was subjected to any unnecessary delay or was detained any longer than the short period required to complete the roadside tests. Nor is there any suggestion that administration of these tests was anything other than routine and standardized, or that they were conducted other than in the shortest possible amount of time. Relatedly, defendant has identified no less intrusive investigatory technique reasonably available to Officer Moritz to verify or dispel his articulated suspicions. Similarly lacking is any proof that defendant, understandably a little nervous over being stopped, was fearful of the officer or either embarrassed or humiliated while performing the field sobriety tests, during which he was neither confined, handcuffed nor transported to another location.

In our view, administration of the field sobriety tests is more analogous to a *Terry* stop than to a formal arrest, and therefore may be justified by a police officer's reasonable suspicion based on particularized, articulable facts suggesting a driver's intoxication. Measured against the important law enforcement interest in ensuring public safety on our roads, both the nature and extent of defendant's detention here are only minimally burdensome on his Fourth Amendment rights and insufficient to warrant application of a more exacting standard. To posit otherwise is to suggest that a police officer must turn a blind eye to new indications of more serious unlawful activity observed after stopping a vehicle for unrelated minor traffic violations.

We have uncovered no authority in this State imposing a probable cause requirement for the administration of roadside sobriety tests. On the contrary, our courts have consistently, albeit without extended discussion, upheld such routine, standardized testing on the basis of a reasonable, articulable suspicion of driver intoxication. *See, e.g., State v. Adubato,* 420 *N.J.Super.* 167, 181, 19 *A.*3d 1023 (App.Div.2011) (finding that the police officer had the "factual basis for an 'articulable suspicion' that the defendant had engaged in criminal conduct, *i.e.,* driving while intoxicated, sufficient to warrant a *Terry* stop, including the

administration of field sobriety tests"); *State v. Nikola,* 359 *N.J.Super.* 573, 583, 821 *A.*2d 110 (App.Div.), *certif. denied,* 178 *N.J.* 30, 834 *A.*2d 404 (2003) (holding that asking defendant to perform a field sobriety test constituted a temporary investigative detention); *State v. Moskal,* 246 *N.J.Super.* 12, 20, 586 *A.*2d 845 (App.Div.1991) (holding "clearly constitutional" a State Police procedure that if a driver is suspected to be under the influence, the trooper would ask the driver to step from his car and then escort him to a field interrogatory area where an interview and certain psychophysical tests would be conducted). Indeed, our courts have routinely used the results of field sobriety testing in determining whether probable cause to effectuate a DWI arrest exists. *See, e.g., Adubato, supra,* 420 *N.J.Super.* at 174, 19 *A.*3d 1023; *State v. Snyder,* 337 *N.J.Super.* 59, 62, 766 *A.*2d 316 (App.Div. 2001); *Moskal, supra,* 246 *N.J.Super.* at 21, 586 *A.*2d 845. These rulings obviously presume that a police officer may legitimately request a field sobriety test in the process of determining whether probable cause for an arrest exists, rather than only after probable cause for arrest has been established.

Other jurisdictions as well have rejected the idea that probable cause is required before field sobriety tests may be administered. *See, e.g., Wilder v. Turner,* 490 *F.*3d 810, 815 (10th Cir.2007), *cert. denied,* 552 *U.S.* 1181, 128 *S.Ct.* 1229, 170 *L.Ed.*2d 62 (2008); *Miller v. Harget,* 458 *F.*3d 1251, 1259–60 (11th Cir.2006), *cert. denied,* 550 *U.S.* 957, 127 *S.Ct.* 2429, 167 *L.Ed.*2d 1130 (2007); *Bernardi v. Klein,* 682 *F.Supp.*2d 894, 902 (W.D.Wis.2010); *Gal-imba v. Municipality of Anchorage,* 19 *P.*3d 609, 611–12 (Alaska Ct.App.2001); *State v. Superior Court,* 149 *Ariz.* 269, 718 *P.*2d 171, 176 (1986); *State v. Taylor,* 648 *So.*2d 701, 703–04 (Fla.1995); *State v. Ferreira,* 133 *Idaho* 474, 988 *P.*2d 700, 706–07 (Idaho Ct.App.1999), *cert. denied,* 529 *U.S.* 1038, 120 *S.Ct.* 1533, 146 *L.Ed.*2d 348 (2000); *Commonwealth v. Blais,* 428 *Mass.* 294, 701 *N.E.*2d 314, 317 (1998); *People v. Rizzo,* 243 *Mich.App.* 151, 622 *N.W.*2d 319, 325 (2000); *Hulse v. State, Dep't of Justice, Motor Vehicle Div.,* 289 *Mont.* 1, 961 *P.*2d 75, 87 (1998); *State v. Royer,* 276 *Neb.* 173, 753 *N.W.*2d 333, 340 (2008); *County of Jefferson v.*

*Renz,* 231 *Wis.*2d 293, 603 *N.W.*2d 541, 549 (1999). *But see People v. Carlson,* 677 *P.*2d 310, 317 (Colo.1984). These cases uniformly view typical field sobriety testing as an investigative detention, short of an arrest and therefore conclude that the State's interest in their administration based upon a particularized suspicion rather than the more stringent standard of probable cause substantially outweighs the decidedly limited intrusion into the motorist's liberty.

We are in complete accord with this view. Officer Moritz was required to have only a reasonable articulable suspicion that defendant was driving while intoxicated in order to expand the scope of the initial traffic stop and detain defendant for field sobriety testing. We are equally satisfied that based on the facts of record, such reasonable articulable suspicion existed. More than the mere odor of alcohol was involved here. *See State v. Jones,* 326 *N.J.Super.* 234, 245, 741 *A.*2d 104 (App.Div.1999). Defendant was stopped at 3:30 a.m. in the middle of summer in a shore town, coming from a local bar. He appeared somewhat nervous. *See Citarella, supra,* 154 *N.J.* at 280, 712 *A.*2d 1096. Defendant admitted consumption and while he acknowledged having only one beer, this was contradicted by the police officer's sense impression that the strong odor of hard liquor was emanating from defendant's breath. Given the totality of circumstances presented, the officer had a reasonable articulable suspicion that defendant was driving while intoxicated and the Law Division was therefore correct in affirming the municipal court's denial of defendant's suppression motion.

Affirmed.