**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2163-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDWARD BEJARANO,

     Defendant-Appellant.

_____

Submitted August 30, 2022 – Decided September 23, 2022

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 19-10-0623.

Joseph E. Krakora, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the brief).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Lauren H. Fox, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After losing his motion to suppress evidence seized without a warrant following a motor vehicle stop, defendant entered a negotiated guilty plea to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and fourth-degree unlawful possession of a high-capacity ammunition magazine, N.J.S.A. 2C:39-3(j).  He was sentenced in accordance with the plea agreement to an aggregate term of three years' imprisonment, with a one-year period of parole ineligibility pursuant to a Graves Act waiver under N.J.S.A. 2C:43-6.2. The waiver reduced the mandatory minimum sentence on the unlawful possession of a handgun conviction.  Additionally, pursuant to N.J.S.A. 2C:44-1(f)(2), the trial court imposed a sentence one degree lower after finding that the mitigating factors substantially outweighed the aggravating factors, and the interest of justice demanded a downgraded sentence.  See State v. Rice, 425 N.J. Super. 375, 384 (App. Div. 2012).

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> BECAUSE THERE WAS NO REASONABLE SUSPICION OF EITHER A MOTOR VEHICLE VIOLATION OR A CRIME, THE STOP WAS ILLEGAL.  ACCORDINGLY, THE EVIDENCE FOUND AS A RESULT OF THE STOP MUST BE SUPPRESSED.

A-2163-20

A.  The Stop Was Unlawful Because The State Failed To Present Any Evidence That The Car's Windows Were Illegally Tinted.

   1.  Because Not All Window Tints Are Illegal In New Jersey, Simply Asserting That A Car's Windows Are "Tinted" Does Not Establish Reasonable Suspicion For A Traffic Stop

      a.  N.J.S.A. 39:3-74 only prohibits aftermarket tinting on a car's windshield or front windows that unduly interferes with visibility.

      b.  N.J.S.A. 39:3-75 does not apply to window tint but rather prohibits window glass that causes an undue or unsafe distortion of visibility.

      c.  The State failed to establish reasonable suspicion that the windows on defendant's car violated N.J.S.A. 39:3-74 or 39:3-75.

   2.  Moreover, The Officer Did Not Provide The Requisite Testimony That He Believed The Vehicle Was In Violation Of Arizona's Window Tinting Laws

B.  The Stop Was Unlawful Because The Officer Lacked Reasonable Suspicion That The Defendant Was Engaged In Or About To Engage In Criminal Activity.

3

Because the State failed to meet its burden of establishing reasonable and articulable suspicion to justify the motor vehicle stop, we reverse the denial of defendant's suppression motion, vacate defendant's convictions and sentence, and remand for further proceedings.

I.

We glean these facts from the September 30, 2020 suppression hearing during which Bernards Township Police Officer John Mulhall, who had been a police officer for four years, was the sole testifying witness. Mulhall testified that on August 21, 2019, he was monitoring traffic near the King George Road Exxon gas station in Bernards Township. Sometime between 12:30 p.m. and 1:00 p.m., Mulhall observed a "silver" "Toyota Camry" drive by with "tinted windows," "a black bumper," and "no front [license] plate." Mulhall proceeded to follow the vehicle and observed an Arizona rear license plate registered to a "rental agency in Arizona." Mulhall acknowledged he did not know the laws governing window tinting in Arizona. However, according to Mulhall, in his experience, "a lot of vehicles that have no front plate, tinted windows, and are registered . . . out of State" are affiliated with the "Felony Lane Gang," "an organization that commits motor vehicle burglaries" by breaking into parked cars and stealing identification information.

4

Mulhall followed the Camry a short distance from the gas station and into the parking lot of the Dewy Meadow Shopping Plaza. The Camry stopped in front of an unoccupied bank where Mulhall observed the driver "look[] over his shoulder." After about ten to fifteen seconds, the Camry left the shopping plaza and headed back in the direction from which it had originally come. Mulhall followed the Camry out of the shopping plaza. Due to the "tinted windows" and "suspicious driving behavior," and believing the driver was "trying to distance himself from [Mulhall]," Mulhall "activate[d] his emergency lights" and conducted a motor vehicle stop at the same Exxon gas station.

After the stop, Mulhall approached the Camry on the "passenger side," and asked the passenger to roll down her window, at which point Mulhall smelled "an overwhelming odor of raw marijuana coming from inside the vehicle." Mulhall read the passenger and the driver their Miranda[1] rights and ordered the driver, later identified as defendant, out of the vehicle. When defendant exited the vehicle, he advised Mulhall that "he had a pistol in his waistband." Mulhall handcuffed defendant and placed him in the back seat of the police car. He recovered from defendant's person a "MP9 semi-automatic handgun, loaded with [fifteen] rounds in the magazine and an empty chamber."

---

[1] Miranda v. Arizona, 384 U.S. 436 (1996).

A subsequent search of the Camry pursuant to a search warrant revealed "over half an ounce of [m]ethamphetamine," approximately "[twenty-three] grams of . . . [h]eroin, a large quantity of Oxycodone and other prescription pills," and "under [fifty] grams of marijuana."

Defendant was transported to police headquarters where he was issued motor vehicle summonses for tinted windows, N.J.S.A. 39:3-75, and operation of a motor vehicle while in possession of controlled dangerous substances (CDS), N.J.S.A. 39:4-49.1. Defendant was subsequently charged in a Somerset County indictment with second-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5 (count one); three counts of second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5 (counts two through four); two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (counts five and six); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count seven); second-degree possession of a weapon while committing a CDS offense, N.J.S.A. 2C:39-4.1(a) (count eight); and fourth-degree unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count nine).[2]

---

[2] The other occupant of the Camry was also charged in the indictment but is not a participant in this appeal.

Defendant moved to suppress the evidence that formed the evidential basis for the charges, arguing the evidence was "seized as a result of . . . an illegal motor vehicle stop" that rendered the fruits of the search subject to the exclusionary rule. Specifically, defendant contended that the officer lacked "reasonable articulable suspicion of a motor vehicle violation or a crime" to justify the stop and that the State failed to present evidence proving that the Camry's windows were illegally tinted.

In an October 1, 2020 order, the judge denied defendant's motion. In an accompanying written statement of reasons, the judge found Mulhall "credible," and determined that Mulhall had "observed a motor vehicle that he, in good faith, objectively believed was in violation of the tinted window statute." For support, the judge relied on "[t]he photographs introduced into evidence" that "demonstrate[d] that the vehicle had tinted windows." The judge concluded that because there was "no question that [Mulhall] observed tinted windows," he "had a reasonable and articulable suspicion that the tinted window statute and/or related administrative regulation was violated."

The judge explained that "[t]he basis for the stop was objectively reasonable even if the officer was incorrect as to the precise level of tint on the vehicle windows, or whether it was legal under the laws of Arizona concerning

7

tinting of motor vehicles" because it was "axiomatic that a police officer may stop a motor vehicle for a motor vehicle violation even if it turns out at trial that the officer was incorrect." The judge also determined that based on the officer's observations, Mulhall had "a reasonable, articulable and well-grounded suspicion that the occupants of th[e] vehicle were engaged in unlawful 'Felony Lane' activities."

In this ensuing appeal, defendant renews his challenge to the motor vehicle stop, arguing the State failed to establish reasonable articulable suspicion that the windows on defendant's vehicle were illegally tinted or that defendant was engaged in or about to engage in criminal activity.

## II.

Our scope of review of a trial court's suppression ruling is well established. We must "defer[] to the trial court's factual findings" and uphold them so long as they are supported by "sufficient credible evidence in the record." State v. Nelson, 237 N.J. 540, 551 (2019). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Robinson, 200 N.J. 1, 15 (2009) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). In contrast, we review the

trial court's interpretation of the law and the legal "consequences that flow from established facts" de novo. State v. Gamble, 218 N.J. 412, 425 (2014).

Turning to the substantive legal principles governing this appeal, "[t]he Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures." Nelson, 237 N.J. at 552 (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). "Our jurisprudence under both constitutional provisions expresses a preference that police officers secure a warrant before they execute a search." State v. Witt, 223 N.J. 409, 422 (2015). "Warrantless searches are permissible only if 'justified by one of the "few specifically established and well-delineated exceptions" to the warrant requirement.'" Ibid. (quoting State v. Frankel, 179 N.J. 586, 598 (2004)). "[T]he State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure" falls within an exception. Elders, 192 N.J. at 246.

The exception at issue in this case is an investigatory stop of a motor vehicle. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been

or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)); see also State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehic[le] violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act.").

The reasonable suspicion standard requires "some minimal level of objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "[R]aw, inchoate suspicion grounded in speculation cannot be the basis for a valid stop." State v. Scriven, 226 N.J. 20, 34 (2016). "Although reasonable suspicion is a less demanding standard than probable cause, '[n]either "inarticulate hunches" nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights.'" State v. Nyema, 249 N.J. 509, 527 (2022) (alterations in original) (quoting State v. Stovall, 170 N.J. 346, 372 (2002) (Coleman, J., concurring in part and dissenting in part)).

"Determining whether reasonable and articulable suspicion exists . . . is a highly fact-intensive inquiry that demands evaluation of 'the totality of circumstances surrounding the police-citizen encounter, balancing the State's

interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" Id. at 528 (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)). "It is fundamental to a totality of the circumstances analysis of whether reasonable suspicion exists that courts may consider the experience and knowledge of law enforcement officers." Stovall, 170 N.J. at 363.

In assessing the totality of the circumstances for a stop based on a motor vehicle violation, a reviewing court must determine "[whether] the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate." State v. Arthur, 149 N.J. 1, 7-8 (1997) (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968)). Stated differently, the stop is lawful or not at the moment the Fourth Amendment seizure is initiated. However, "the State is not required to prove that the suspected motor-vehicle violation occurred." State v. Locurto, 157 N.J. 463, 470 (1999). Rather, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 439 (2018).

Pertinent to this appeal, recently, in State v. Smith, our Supreme Court expounded on when police may stop a vehicle based solely on tinted windows and held "that reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." 251 N.J. 244, 253 (2022). In Smith,

> detectives stopped [the] defendant['s] . . . motor vehicle for a purported tinted windows violation after the detectives observed dark tinting on [the] defendant's rear windshield. Despite the rear windshield's tint, the detectives were able to see that [the] defendant was alone in the car and was making a furtive "shoving" motion, raising suspicions that he was trying to conceal a weapon. When the detectives searched the vehicle, they found a firearm. The detectives cited [the] defendant for a tinted windows violation and charged him with various weapons offenses. [The d]efendant moved to suppress the firearm, arguing that the motor vehicle stop was unlawful because the detectives could not have had a reasonable and articulable suspicion that the tinting on defendant's rear windshield violated N.J.S.A. 39:3-74.

> [Id. at 252.]

In addressing the issue, the Court conducted "an interpretive analysis" of the various statutes and regulations pertaining to motor vehicle window tinting. Id. at 258. The Court first determined that "N.J.S.A. 39:3-75, which governs automotive safety glass, does not apply to window tint violations," but instead

12

"is concerned solely with the quality and maintenance of . . . safety glazing material, not aftermarket tinted window film." Id. at 253, 261. The Court also pointed out that "[r]elated regulations [were] equally inapposite." Id. at 261.[3]

Next, the Court focused on N.J.S.A. 39:3-74, which provides in relevant part:

> No person shall drive any motor vehicle with any . . . non-transparent material upon the front windshield . . . or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.
>
> No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.
>
> [(emphasis added).]

Noting that "[t]he statute does not expressly define the term 'non-transparent,'" the Court looked to "[t]he dictionary definition of 'non-transparent'" and concluded that "[i]n order to establish a reasonable suspicion of a tinted windows violation under N.J.S.A. 39:3-74, the State will . . . need to present

---

[3] The Court also determined that "[o]ther statutory provisions addressing motor vehicle window tinting [were] . . . inapplicable." Smith, 251 N.J. at 261. Specifically, the Court concluded that N.J.S.A. 39:3-75.1 and 39:3-75.2 did not support the stop at issue. Ibid. Those provisions are equally inapplicable to this case.

evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside." Smith, 251 N.J. at 264-66.

Applying those principles, the Smith Court held that "[u]nder the statute's plain language, the tint on [the] defendant's rear windshield could not constitute a violation of N.J.S.A. 39:3-74" or "give rise to the reasonable and articulable suspicion necessary to justify this motor vehicle stop." Id. at 260. The Court further explained:

> The facts of this case provide an illustrative example of window tint that does not meet the definition of the statutory term "non-transparent." [The detective] testified that, despite the tinting on defendant's rear windshield, he was able to see with just the police SUV's headlights and street lighting that there was only one person in the vehicle and that the person was making movements. Such a degree of window tint -- which allows the officer to see both the number of people in the vehicle and their movements -- is not "non-transparent" within the meaning of the statute.
>
> [Id. at 265-66.]

Applying the Court's recent holding in Smith to the facts of this case, we conclude that Mulhall's undisputed testimony pertaining to the window tinting on defendant's car failed to establish the reasonable and articulable suspicion of a tinted windows violation needed to justify a motor vehicle stop. Critically,

14

Mulhall never testified that the tinted front side window inhibited his ability to see the driver as defendant's vehicle passed. Rather, he testified that he saw defendant "look[] over his shoulder" before exiting the shopping plaza. Mulhall's ability to see defendant's movement inside the vehicle does not satisfy the definition of "'non-transparent' within the meaning of the statute." Id. at 266.

Absent the tinted windows violation, Mulhall's suspicions that the vehicle's occupants were engaged in unlawful "Felony Lane Gang" activities, based on the car having out-of-state plates, no front plates, and turning around in a shopping center, does not rise to the level of reasonable suspicion under the totality of the circumstances analysis. See State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001) (holding that the totality of the circumstances did not amount to an objectively reasonable suspicion of illegal conduct to support a stop of a parked car with out-of-state plates where the occupant failed to make eye contact with the officer and a burglary had been reported in the area a week or two prior). "An investigative stop 'may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch.'" Smith, 251 N.J. at 258 (quoting State v. Chisum, 236 N.J. 530, 546 (2019)).

Because we conclude the State failed to meet its burden of proof to validate the motor vehicle stop, the gun, ammunition, and drugs seized must be

suppressed as fruits of the unlawful stop.  See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963) (holding that the exclusionary rule extends to direct and indirect products of unlawful police conduct); Smith, 251 N.J. at 258 ("A motor vehicle stop that is not based on a 'reasonable and articulable suspicion is an "unlawful seizure," and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule.'" (quoting Chisum, 236 N.J. at 546)); State v. Smith, 155 N.J. 83, 100 (1998) ("Evidence obtained as the fruit of an unlawful search or seizure must be suppressed.").  Therefore, we reverse the order denying defendant's suppression motion, vacate defendant's convictions and sentence, and remand for further proceedings.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-2163-20