**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1157-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AJMAL NESBIT, a/k/a
AJMAL J. NESBIT,

    Defendant-Appellant.

_____

        Argued September 16, 2024 – Decided October 17, 2024

        Before Judges Gummer and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 21-06-0433.

        Rachel Glanz, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Rachel Glanz, of counsel and on the briefs).

        David M. Galemba, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; David M. Galemba, of counsel and on the brief).

PER CURIAM

Defendant Ajmal Nesbit appeals from the trial court's August 4, 2020 order denying his motion to suppress evidence seized following a traffic stop and a December 9, 2022 judgment of conviction, which was entered after a guilty plea. Central to defendant's argument is the purported unconstitutional vagueness of the statute on which police relied to effectuate the stop. Defendant argues that any lane change ambiguity should be construed in his favor, thereby invalidating the stop and subsequent search. For the reasons that follow, we hold the statute is not unconstitutionally vague and affirm the trial court's order and judgment.

I.

We draw the facts from video recordings of the stop and search, testimony elicited at the motion to suppress, and colloquy from the guilty-plea proceeding. In the afternoon of August 29, 2019, defendant was a passenger in a Nissan Altima sedan operated by Ashley Smith. Smith was driving westbound on Route 22 in Green Brook Township. At the same time and location, the Somerset County Sheriff's Department was conducting training for traffic infractions.

2

Senior officer Michael Kromar was driving a "low profile"[1] police vehicle accompanied by junior officer Joshua Manzo. As part of the training protocol, Officer Manzo would voice alleged infractions to Officer Kromar. Officer Kromar would then advise whether he agreed. When both agreed on a given infraction, the officers would effectuate a stop.

In traffic described as "medium," with vehicles in both westbound-dedicated lanes of highway, the police cruiser travelled directly behind Smith's sedan in the left lane. The officers observed Smith "swerve[ ] over the center line with its two right side tires. As the vehicle d[id] this, the driver put[ ] . . . a blinker on and finishe[d] the lane change." Both officers determined an improper signaling traffic infraction had occurred, activated their body-worn cameras and initiated a stop, with both vehicles coming to rest front-to-back in an adjacent parking lot.

The officers approached Smith's car to obtain her credentials, which she provided. As they returned to their cruiser, both officers commented on the

---

[1] The "low profile" police vehicle, also known as a "stealth" or "ghost car," was marked with faded Somerset County Sheriff's lettering. The vehicle did not have the familiar light bar on its roof, though it did have "police lights in the grill and there was a visible spotlight on the left-hand side."'

A-1157-22

smell of marijuana emanating from within Smith's car.[2]  The officers asked Smith about the location of the marijuana, and she told them it was in the center console.  Smith, Nesbit, and a third back-seat occupant were told to exit the vehicle.  When patted down, the officers recovered approximately 250 bags of fentanyl from Nesbit's front left pants pocket.  Defendant was arrested and later indicted for third-degree unlawful possession of a controlled dangerous substance with intent to distribute.  N.J.S.A. 2C:35-5(a)(1); N.J.S.A. 2C:35-5(b)(5).

Following the hearing on defendant's motion to suppress, the trial court found credible the officers' testimony regarding Smith's violative operation of her vehicle and concluded the stop was valid.  The court found defendant's testimony to be less than credible, noting that "he wished to advance his narrative of the events at all costs, regardless of what made sense under the circumstances . . . was rambling at times, and beset with his opinions and suggestions that he was improperly targeted by the officers regardless of the objective facts[.]"  The court also found that Nesbit's "body language and

---

[2] The record lacks information on whether the smell was of raw or burnt marijuana.  In either event, defendant has not advanced an argument that the police did not have probable cause to search the vehicle.  Instead, defendant challenges the lawfulness of the stop preceding the search.

demeanor indicate he was less than truthful . . . ." Concerning Smith's violation of N.J.S.A. 39:4-126, "[s]ignaling before starting, turning[,] or stopping," the court reasoned in an August 4, 2020 written decision:

> This motor vehicle statute does not require that a signal be given whenever a lane change is made – only when any other traffic may be affected by such movement. The State must establish that the officer had a reasonable and articulable suspicion that the failure to signal may have affected other traffic. The State need not prove that a motor vehicle violation occurred as a matter of law. The question is whether the stop is lawful, not whether the State could convict the driver.

The court found "Smith['s] vehicle drifted over the center line between the two lanes and entered into the right lane and [only] then activated the blinker." It concluded "by a preponderance of the credible evidence . . . a reasonable and articulable suspicion [existed] that a traffic violation occurred . . . [forming a] legal basis to stop the Smith vehicle."

In September 2022, defendant pleaded guilty to a single count of possession of controlled dangerous substances with intent to distribute along with an unrelated charge. In exchange, the State agreed to recommend an aggregate term of a flat four years in state prison. After imposing the prison term in accordance with the plea agreement, the trial court stayed incarceration pending the outcome of this appeal.

5

On appeal, defendant does not challenge the legality of the search per se. Instead, he advances the following arguments for the first time.

POINT I

THE TRAFFIC STOP WAS UNLAWFUL BECAUSE N.J.S.A. 39:4-126 CANNOT BE CONSTRUED TO REQUIRE A MOTORIST TO SIGNAL AN INTENTION TO CHANGE LANES.  EVEN IF SUCH A CONSTRUCTION WERE PERMISS[I]BLE, POLICE LACKED REASONABLE AND ARTICULABLE SUSPICION THAT A SIGNAL WAS REQUIRED UNDER THE CIRCUMSTANCES.

    A. The Plain Language of N.J.S.A. 39:4-126 Does Not Require a Motorist to Signal a Lane Change Because a Lane Change is Not a "Turn" Within the Meaning of the Statute. Alternatively, the Word "Turn" as Used in the Statute is Unconstitutionally Vague as Applied to the Conduct of Changing Lanes.

    B. Assuming that a Lane Change is a "Turn" Within the Meaning of N.J.S.A. 39:4-126, Police Lacked Reasonable and Articulable Suspicion that a Turn Signal was Required Under the Circumstances.

When reviewing a decision on a motion to suppress, appellate courts defer to the trial court's factual findings and will uphold those findings when they are

supported by sufficient, credible evidence in the record. State v. Tiwana, 256 N.J. 33, 40 (2023) (citing State v. A.M., 237 N.J. 384, 395 (2019)). "[F]actual findings based on a video recording or documentary evidence" are reviewed under the same standard. State v. S.S., 229 N.J. 360, 381 (2017). In contrast, appellate courts do not defer to a trial court's legal conclusions, which are reviewed de novo. Tiwana, 256 N.J. at 40 (citing State v. Rockford, 213 N.J. 424, 440 (2013)). Because defendant does not challenge the credibility findings made below as to probable cause for the search, we instead concern ourselves with the stop.

"To justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." State v. Carter, 247 N.J. 488, 524 (2021) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016) (internal quotations omitted)); see also Delaware v. Prouse, 440 U.S. 648, 663 (1979) (recognizing the constitutional propriety of warrantless traffic stops if based upon articulable police suspicions of illegality). If an officer articulates reasonable suspicion of a traffic violation to justify a traffic stop, the State has the burden to prove by a preponderance of the evidence that reasonable suspicion was present. State v. Amelio, 197 N.J. 207, 211 (2008); State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) (holding a "motor vehicular violation, no matter how minor, justifies a stop

without any reasonable suspicion that the motorist has committed a crime or other unlawful act" and that the initial stop for tinted windows and loud exhaust was valid).

## III.

At issue is interpretation of N.J.S.A. 39:4-126, which reads in pertinent part:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway . . . , or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway, or start or back a vehicle unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
>
> A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

Defendant contends that the plain language of this statute cannot be construed to require a driver to signal before changing lanes. Instead, he maintains that it applies only to a left or right "turn" and that because a lane

change does not constitute a "turn" in any normative sense, the statute is inapplicable to the motorist's actions here. Defendant further contends that "[b]ecause N.J.S.A. 39:4-126 unambiguously does not prohibit changing lanes without signaling, Officer Manzo was wrong to stop the sedan on that basis." He also posits that "if the statute is construed as anything other than unambiguous . . . , it must be deemed unconstitutionally vague as applied to the conduct of changing lanes without signaling." Defendant surmises that even if the statute could be read to require a motorist to signal a lane change under certain circumstances, Officer Manzo did not have reasonable and articulable suspicion under these circumstances. Defendant contends that because the stop was not supported by a reasonable, articulable suspicion of a motor-vehicle violation, it was unlawful.

In advancing these arguments, defendant maintains we are faced with a question of first impression, noting that leading cases do not squarely address whether a motorist is required to signal a lane change "under any circumstances." Defendant observes that our Supreme Court in State v. Williamson, 138 N.J. 302 (1994), considered the circumstances where "a motorist may be pulled over for failing to signal a lane change, . . . but was not

A-1157-22

presented with the question of whether the statute's signaling requirement applies to lane changes in the first instance."

In <u>Williamson</u>, the Court was faced with a scenario where a New Jersey state trooper observed defendant while driving "a few car lengths ahead, mov[ing] from the center lane into the right lane without a signal. The trooper stopped defendant's vehicle on that basis." <u>Id.</u> at 303-04. In remanding to the trial court for further findings, the Supreme Court found that "[t]he statute does not require a signal for every lane change. Perhaps it should. Because the statute does not contain such a requirement, the officer ordering a stop must have some articulable basis for concluding that the lane change might have an effect on traffic." <u>Id.</u> at 304. On remand, the Court required the trial court to determine whether "the failure to signal may have affected any other traffic." <u>Id.</u> at 305.

Defendant also invites us to consider a related statute, N.J.S.A. 39:4-88(b), which provides:

> A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

Because the Legislature employed the word "moved" and not "turned" to describe the lane change, as in N.J.S.A. 39:4-126, he urges it is reasonable for us to infer that the statute at issue does not adequately describe, and thereby

proscribe, unsignaled lane changes. We decline to adopt that interpretation. N.J.S.A. 39:4-126 applies when "any other traffic may be affected" by an unsignaled turn. "'Other traffic' may include an officer's vehicle." Williamson, 138 N.J. at 304. A potential impact on traffic is enough. State v. Moss, 277 N.J. Super. 545, 547 (App. Div. 1994). "Motorists in the vicinity whose movements may be affected must be made aware of a driver's intentions." Williamson, 138 N.J. at 304. To justify a stop, the quantum of evidence need only be reasonably articulable; it need not reach the quantum of evidence necessary for conviction. Id. at 303. The record here establishes that "other traffic" consisted of the police cruiser following defendant, as well as any of the surrounding vehicles constituting the credibly attested medium-level traffic in the area.

A canon of statutory interpretation is that we "avoid constructions that render any part of a statute inoperative, superfluous, or meaningless, or lead to absurd results." Innes v. Innes, 117 N.J. 496, 509 (1990) (quoting Abbotts Dairies v. Armstrong, 14 N.J. 319, 328 (1954)); Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521 (1984).

As defendant acknowledges in his brief, every day on the roadways of this state, drivers know to signal before they change lanes. We disagree with

11

defendant's theory that while commonplace, "[s]uch behavior may demonstrate [an intent] to be cautious and courteous to other drivers on the road. It does not bespeak the public's understanding that the failure to properly signal a lane change is grounds to be pulled over by police." Rather, we agree with the State's position that it is well within our citizenry's experience to know that those who do not adequately signal a lane change, when that lane change might impact other traffic, may fairly expect to receive a summons when pulled over by the police. In the first of six separate audio-visual clips of the stop, Smith acknowledged as much. Were we to hold otherwise, the operative phrase "move right or left upon a roadway" in the subject statute would be rendered inoperative, superfluous, and meaningless, leading to absurd results.

The case before us does not present an unprecedented circumstance or merit a novel interpretation of well-established law. Our examination of the record supports the trial court's findings of fact and conclusions of law, as based on sufficient, credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-1157-22